Timothy A. BROWN, et al., Plaintiffs

v.

**ASTRO HOLDINGS, INC.,**
et al., Defendants

No. Civ.A. 04–5031.

United States District Court, E.D. Pennsylvania.

Aug. 29, 2005.

Bruce S. Levine, Peter D. Dechiara, Tzvia Feiertag, Cohen Weiss & Simon LLP, New York, NY, Linda M. Martin, Willig Williams & Davidson, Philadelphia, PA, for Plaintiffs.

Patrick M. Northen, Dilworth Paxson, LLP, Sarah Elise Pontoskise, Conrad O'Brien Gellman & Rohn, PC, Philadelphia, PA, for Defendants.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

In this suit, the trustees of a multiemployer pension plan seek to recover ERISA withdrawal liability from several corporate affiliates and individual owners of a bankrupt shipping company. The plaintiffs allege that the corporate affiliates are liable as "alter egos" of the original company and that the individual owners are liable under a piercing-the-corporate-veil theory.[1]

---

1. This suit is related to another ERISA action pending before this Court. *Government Dev. Bank for Puerto Rico v. Holt Marine Terminal, Inc.*, Civ. No. 02–7825 (E.D. Pa. filed Oct. 10, 2002). Both this suit and *Government Development Bank* seek to recover withdrawal liability triggered by the bankruptcy of the same company, NPR, Inc., but the two suits involve different pension plans and different, but overlapping, defendants. Both suits advance similar theories of alter ego liability and veil piercing, and the defendants in *Government Development Bank* have filed a motion for summary judgment raising arguments similar to those raised in this motion to dismiss.

The defendants have moved to dismiss on the ground that ERISA does not permit liability to be imposed under either an alter ego or a veil piercing theory. This appears to be an issue of first impression in this circuit. The Court finds that both the plaintiffs' alter ego and veil piercing claims are permissible under ERISA. The relevant statutory language is not so comprehensive as to preclude the availability of alter ego or veil piercing theories, and the application of those theories here accords with both federal common law and the purposes and policies behind ERISA.

In addition, there is also an issue as to subject matter jurisdiction over this action because the plaintiffs are not alleging a direct violation of ERISA but instead are seeking to impose ERISA liability solely under alter ego and veil piercing theories. The Court, however, concludes that it has jurisdiction over this matter because the plaintiffs' alter ego claim states a federal question under ERISA and the Court has supplemental jurisdiction over the plaintiffs' veil piercing claim.

## I. *FACTUAL BACKGROUND*

The plaintiffs in this suit are the trustees of the Master, Mates and Pilots Pension Plan (the "Plan"), which is alleged to be a multiemployer pension plan within the meaning of 29 U.S.C. §§ 1002(37) and 1301(a)(3). Complaint ¶¶ 8–9. They seek to recover withdrawal liability under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, as amended by the Multiemployer Pension Plan Amendments Act of 1980 (the "MPPAA"), 29 U.S.C. § 1381 *et. seq.*

The withdrawal liability at issue arises from the bankruptcy of a shipping company, NPR, Inc. ("NPR"). The plaintiffs' complaint alleges that on or about March 2001, NPR and several related companies, but not any of the defendants, declared bankruptcy, triggering a NPR's "complete withdrawal" from the Plan on or about April 2001. Complaint ¶¶ 11, 16, 17. This withdrawal triggered ERISA liability under 29 U.S.C. § 1381(a).

The plaintiffs have now sued to recover this liability from thirteen corporate affiliates of NPR (the "corporate defendants") and four individual members of the Holt family (the "individual defendants"). The four members of the Holt family are Thomas Holt, Sr. and his children Thomas Holt, Jr., Leo Holt and Michael Holt.

The plaintiffs allege that the corporate defendants, together with NPR and other companies not involved in this lawsuit, constituted a family of closely-held corporations, all owned by Thomas Holt, Sr. and his sons and all in the business of providing port services and shipping. Complaint ¶¶ 13, 22, 24. The plaintiffs describe the companies as a "family conglomerate" which they refer to as the "Holt Family Enterprise." Complaint ¶¶ 22–23.

The complaint contains few details of the alleged relationships between the corporate defendants and NPR or of the ownership of these companies by the individual defendants. The complaint alleges that Thomas Holt, Sr. indirectly owns 100% of NPR through two layers of wholly owned subsidiaries. NPR is alleged to be wholly owned by NPR Holding Corporation, which is wholly owned by the Holt Group, Inc., which is wholly owned by Thomas Holt, Sr. Complaint ¶ 26. Thomas Holt, Jr. is alleged to have been appointed President and Director of NPR in 1997 and Michael Holt and Leo Holt are alleged to have been Directors of the Holt Group, Inc. Complaint ¶ 27. The complaint does not explain the relationship between NPR and the corporate defendants or allege that any of the individual defendants other than Thomas Holt, Sr. had any ownership interest in NPR.

The complaint also contains few and contradictory allegations about the ownership of the corporate defendants. The complaint generally alleges on information and belief that the Holt children "directly or indirectly co-owned" the corporate defendants. Complaint ¶ 13. The complaint also contains the somewhat contradictory and much less sweeping allegation that "at all relevant times" each of the individual defendants owned "one or more" of the corporate defendants. Complaint ¶ 25. In addition, the complaint alleges that each of the individual defendants had the option of obtaining unspecified "interests" in the corporate defendants at any time and that they transferred some of these interests in the corporate defendants to third-party family members and friends. Complaint ¶ 29–30. The plaintiffs contend that the individual defendants "maintained absolute domination and control" over the corporate defendants and treated NPR and the corporate defendants as "one closely held enterprise." Complaint ¶ 31.

Based on these allegations, the plaintiffs advance claims based on alter ego liability and piercing the corporate veil. The plaintiffs contend that the corporate defendants are liable as "alter egos" of NPR because NPR and the affiliates are so "inextricably intertwined" that they have "effectively merged" into a single entity. Complaint at ¶¶ 28, 36, 48–49. They allege that the individual defendants are liable under a piercing theory because they "directly or indirectly" owned NPR and the corporate defendants and they "failed to maintain corporate formalities" between NPR and its corporate affiliates, and that therefore "the corporate veils of the Corporate Defendants should be pierced to hold the [individual defendants] personally, jointly, and severally liable for NPR's withdrawal liability under ERISA." Complaint at ¶¶ 38, 43, 50.

The plaintiffs' complaint does not allege that any of the defendants fit the statutory definition of an "employer" liable for withdrawal liability under 29 U.S.C. § 1381(a), either directly or as "trades or businesses under common control" to be treated as a single employer under 29 U.S.C. § 1301(b)(1). At oral argument, the plaintiffs confirmed that they are proceeding only on their alter ego and veil piercing theories. Transcript of June 9, 2005, Hearing at 3.

The defendants have now moved to dismiss the plaintiffs' complaint on the ground that neither of the plaintiffs' theories of liability is available under ERISA or the MPPAA. The gist of the defendants' argument is that ERISA is so comprehensive a statute that it permits only those remedies specifically authorized by its terms. Because ERISA contains no provisions specifically authorizing alter ego liability or veil piercing, the defendants contend that those theories of liability are not permitted.

Before considering the defendants' arguments, however, the Court must first determine whether it has subject matter jurisdiction over the plaintiffs' claims. In the context of a suit to enforce a judgment, the United States Supreme Court has held that claims seeking to pierce the corporate veil to impose ERISA liability do not present a federal question. *Peacock v. Thomas*, 516 U.S. 349, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996). The Court believes that it must therefore address whether, under *Peacock*, subject matter jurisdiction exists over a suit like this one where the only claims are brought under alter ego and veil piercing theories.

## II. LEGAL ANALYSIS

### A. Subject Matter Jurisdiction over the Plaintiffs' Claims

Although neither the plaintiffs nor the defendants have addressed the

issue of subject matter jurisdiction, the Court has "an independent obligation to satisfy [itself] of jurisdiction if it is in doubt." *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 76–77 (3d Cir.2003). Here, there is a question whether the Court has jurisdiction over the plaintiffs' claims.

The plaintiffs' complaint contends that the Court has federal question jurisdiction over its alter ego and veil piercing claims under 28 U.S.C. § 1331.[2] The United States Supreme Court, however, has held that suits that seek to pierce a corporate veil and impose liability on defendants not otherwise liable under ERISA do not state a federal question. *Peacock v. Thomas*, 516 U.S. 349, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996).

*Peacock* was decided in a different context than this case. The plaintiff in *Peacock* had already obtained a judgment against the statutory employer liable under ERISA and was seeking to enforce that judgment in a second suit against a related company alleging only veil piercing. *Id.* at 351–52, 116 S.Ct. 862.

The *Peacock* holding, therefore, might be read as applying only to suits seeking to enforce a judgment under a veil piercing theory, not to suits like this one where there is no pre-existing judgment about the underlying ERISA liability at issue. Some language in the Court's opinion supports this: the Court describes the issue

before it as "whether federal courts possess ancillary jurisdiction over new actions in which a federal judgment creditor seeks to impose liability for a money judgment on a person not otherwise liable for the judgment." *Id.* at 351, 116 S.Ct. 862. The Court also says that, even assuming *arguendo* that veil piercing is available under ERISA, a plaintiff can invoke the jurisdiction of the federal courts only "by independently alleging a violation of an ERISA provision or a term of the plan." *Id.* at 354, 116 S.Ct. 862.

*Peacock*, however, is unclear as to what constitutes an independent allegation of a violation of ERISA. Here, the plaintiffs have alleged that NPR, which is not a defendant, is liable for withdrawal liability under ERISA and the MPPAA, but the plaintiffs' only claims against the defendants in this lawsuit are claims for alter ego liability and veil piercing. It is unclear whether *Peacock's* requirement that there be an independent allegation of an ERISA violation is satisfied when that allegation is made only against a non-party.

As this Court cannot say with certainty that *Peacock* applies only to suits to enforce a judgment or that *Peacock* is satisfied by allegations of ERISA violations by a non-party, the Court will assume that *Peacock* applies to this case and will conduct an analysis of subject matter jurisdiction here under its terms.

---

2. The complaint also grounds jurisdiction in 29 U.S.C. § 1451(c), 29 U.S.C. § 1132(e) and 29 U.S.C. § 1132(f). Section 1451(c) grants district courts exclusive jurisdiction over actions brought by a "plan fiduciary, employer, plan participant or beneficiary who is adversely affected by the act or omission of any party under this subtitle with respect to a multi-employer plan," except for actions "brought by a plan fiduciary to collect withdrawal liability" which are subject to the concurrent jurisdiction of the federal district courts and state courts of competent jurisdiction 28 U.S.C. § 1451(a),(c). Sections 1132(e) and 1132(f) provide for exclusive ju-

risdiction in the district courts of "civil actions under this subchapter brought by ... a participant, beneficiary, [or] fiduciary ..." 29 U.S.C. § 1132(e)(1). Section 1132(e) and (f) appear to be inapposite to the claims in the plaintiffs' complaint. By their express terms, these subsections apply only to civil actions brought under "this subchapter," ERISA Subchapter I, 29 U.S.C. §§ 1001–1191. The plaintiffs' complaint does not allege a cause of action under ERISA Subchapter I, but instead alleges only a claim for withdrawal liability under 29 U.S.C. § 1381(a), which is contained in ERISA Subchapter III, 29 U.S.C. §§ 1301–1461.

In *Peacock*, an employee who had won a prior suit against his employer for breach of fiduciary duty under ERISA, brought a new action seeking to pierce his employer's corporate veil and collect the judgment from an individual who was one of the employer's officers and shareholders. The district court granted judgment for the plaintiff and the United States Court of Appeals for the Fourth Circuit affirmed, but the Supreme Court reversed for lack of both federal question and ancillary jurisdiction. *Id.*, 516 U.S. at 351–52, 116 S.Ct. 862.

The Court found that no federal question jurisdiction existed under ERISA because "[p]iercing the corporate veil is not itself an independent ERISA cause of action." *Id.* at 354, 116 S.Ct. 862 (citations omitted). The Court expressed some doubt that veil piercing was permissible under ERISA, but held that, "[e]ven if ERISA permits a plaintiff to pierce the corporate veil to reach a defendant not otherwise subject to suit under ERISA", a plaintiff can invoke the jurisdiction of the federal courts only "by independently alleging a violation of an ERISA provision or a term of the plan." *Id.* at 354, 116 S.Ct. 862. Piercing a corporate veil, the Court held, is not an independent cause of action by itself, but a means of imposing liability on a separate, "underlying" cause of action. *Id.* (citing C. Keating & G. O'Gradney, *Fletcher Cyclopedia of Law of Private Corporations* § 41, p. 603 (1990)). Because the plaintiff had alleged only a claim for piercing the corporate veil but not an underlying ERISA cause of action,

the Court held that there was no federal question. *Id.* Turning to ancillary jurisdiction, the Court held that, because there was no "independent basis for federal jurisdiction" in the suit before it, the federal courts "lack[ed] the threshold jurisdictional power that exists when ancillary claims are asserted in the same proceeding as the claims conferring federal question jurisdiction." *Id.* at 355, 116 S.Ct. 862.

Under *Peacock*, therefore, the plaintiffs' veil piercing claim may be insufficient to support federal jurisdiction. The question then becomes whether the plaintiffs' separate allegations of alter ego liability provide a sufficient basis for jurisdiction. If the plaintiffs' alter ego claims state a federal question, then those claims will provide the "independent basis for federal jurisdiction" sufficient for the Court to exercise ancillary jurisdiction over the veil piercing claims.

Several courts have addressed whether claims of alter ego liability can support federal question jurisdiction under *Peacock*. All have found that such claims support federal jurisdiction, reasoning that alter ego claims, unlike allegations of veil piercing, state a claim for direct liability under ERISA. *Central States, SE & SW Areas Pension Fund v. Central Transport Inc.*, 85 F.3d 1282 (7th Cir.1996) [hereinafter *"Central Transport"*]; *Board of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031 (7th Cir.2000) [hereinafter *"Elite Erectors"*]; *Hudson County Carpenters Local Union No. 6 v. V.S.R. Constr. Corp.*, 127 F.Supp.2d 565 (D.N.J.2000) [hereinafter *"Hudson County Carpenters"*].[3]

**3.** Some decisions in the United States Court of Appeals for the Third Circuit appear to refer to alter ego liability and veil piercing interchangeably. *See, e.g., Trustees of the Nat'l Elevator Ind. Pension, Health Benefit and Educ. Funds v. Lutyk*, 332 F.3d 188, 192 (3d Cir.2003) [hereinafter *"Lutyk"*] ("At summary judgment the District Court *sua sponte*

invoked the 'alter ego doctrine' and questioned whether, pursuant to *Solomon*, ... it might be appropriate for plaintiff to fix liability upon [the defendant] by piercing the corporate veil."); *Solomon v. Klein*, 770 F.2d 352, 353–54 (3d Cir.1985) (in dicta, describing an "alter ego" argument as requiring the factors

*Central Transport* involved a situation very similar to *Peacock*. As in *Peacock*, the plaintiff in *Central Transport* had prevailed in a previous suit (for withdrawal liability) brought against a party statutorily liable under ERISA. The *Central Transport* plaintiff then brought a second suit seeking to collect that judgment from entities related to the originally liable defendant. Unlike *Peacock*, the *Central Transport* plaintiff styled its claim as one for alter ego liability, not piercing the corporate veil. After a bench trial, the district court found that the defendants were alter egos of the originally liable employer and awarded judgment for the plaintiff. On appeal, the United States Court of Appeals for the Seventh Circuit affirmed.

In affirming, the court of appeals addressed the issue of subject matter jurisdiction and distinguished *Peacock*. The piercing claims in *Peacock* had sought to impose liability based solely on the defendant's "capacity as an officer and shareholder of the liable corporation." *Id.*, 85 F.3d at 1286. The alter ego claims in *Central Transport*, in contrast, alleged that the defendants "so dominated and controlled [the originally liable company] that they were the 'true employers' for purposes of ERISA liability." *Id.* The alter ego claim, therefore, unlike the piercing claim in *Peacock*, was a "specific claim for relief under ERISA" sufficient to create federal question jurisdiction. *Id.*

The Court of Appeals for the Seventh Circuit reached the same result in *Elite Erectors*, upholding its jurisdiction over alter ego claims for ERISA liability. *Elite Erectors* distinguished veil piercing claims, which "ask a court to hold *A* vicariously liable for *B*'s debt," from alter ego claims which "assert[ ] that *A* and *B* are *the same entity.*" *Id.*, 212 F.3d at 1038. Liability for an alter ego claim, the court held, is "not vicarious but direct" and therefore "depends on … and arises under, federal law." *Id.*

The reasoning of *Central Transport* and *Elite Erectors* was adopted in this circuit in *Hudson County Carpenters*, in which an ERISA plaintiff brought claims for both alter ego liability and piercing the corporate veil. The court found that the plaintiff's alter ego claims alleged direct liability for ERISA violations on the part of the defendants and therefore were sufficient to confer subject matter jurisdiction. *Id.*, 127 F.Supp.2d at 570. The court held that the plaintiff's veil piercing claims were not sufficient in themselves to sustain jurisdiction, but were subject to the court's supplemental jurisdiction. *Id.* at 571.

The Court finds the reasoning of these cases persuasive. Here, the plaintiffs' alter ego claims allege that NPR and the corporate defendants are essentially one entity: that they "have effectively merged into a single enterprise akin to a partnership under which separate personalities of the corporations do not exist." Complaint ¶ 28. This sufficiently alleges a direct violation of ERISA on the part of the corporate defendants to state a federal question and confer subject matter jurisdiction over the plaintiffs' alter ego claims. As the alter ego claims provide an independent basis for jurisdiction here, this Court can exercise supplemental jurisdiction over the plaintiffs' claims for piercing the corporate

required for "piercing the corporate veil"); *see also Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484 n. 2 (3d Cir.2001) (noting that different theories for disregarding corporate form, including alter ego and veil piercing are "generally similar, and courts rarely distinguish them").

Although the two theories are related, the Court believes, following *Central Transport*, *Elite Erectors*, and *Hudson County Carpenters*, that the two theories of liability are distinct. This is particularly true where, as here, a plaintiff has distinguished between the two theories of liability in its complaint.

veil, which, under *Peacock*, are insufficient in themselves to support jurisdiction.

B. *The Availability of "Alter Ego" Liability and "Veil Piercing" in Claims for Withdrawal Liability under ERISA and the MPPAA*

Having determined that the Court has jurisdiction over the plaintiffs' alter ego and veil piercing claims, the Court will now determine whether those claims are available under ERISA and the MPPAA. The defendants argue that because neither alter ego liability nor veil piercing is specifically authorized in the text of ERISA or the MPPAA, those theories of liability are impermissible. They argue that ERISA and the MPPAA already contain provisions that impose responsibility for withdrawal liability on entities "under common control" with the original signatory to a pension plan, provisions that the plaintiffs concede do not reach the defendants. According to the defendants, these statutory "common control" provisions represent the balance struck by Congress in determining how far withdrawal liability should extend and that courts cannot and should not expand that liability by allowing theories of alter ego or veil piercing.

The defendants concede that their argument is a novel one. They point to no decision, and the Court can find none, that has ever held that alter ego liability or veil piercing is impermissible under ERISA or the MPPAA. Instead, the defendants rely on several statements in decisions by the United States Supreme Court and the United States Court of Appeals for the Third Circuit that caution against judicially expanding the remedies available under ERISA and the MPPAA and that express doubts about the availability of alter ego and veil piercing theories under those statutes.[4]

The plaintiffs, in contrast, point to numerous cases, both in this circuit and elsewhere, in which courts have upheld alter ego or veil piercing theories in suits under ERISA and the MPPAA.[5] In all of these cases, however, the courts assumed that alter ego liability and veil piercing were available, and the issue of whether ERISA and the MPPAA foreclose those remedies was never raised or addressed.

To resolve this apparent issue of first impression, the Court will first set out the relevant provisions of ERISA and the MPPAA and then discuss the governing

4. *See, e.g., Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 209, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002) [hereinafter *"Knudson"*] (ERISA's "carefully crafted and detailed enforcement scheme provides strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.") (citing *Mertens v. Hewitt Associates,* 508 U.S. 248, 251, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993)) (internal quotations omitted); *Trustees of the Nat'l Elevator Ind. Pension, Health Benefit and Educ. Funds v. Lutyk,* 332 F.3d 188, 192–93 (3d Cir.2003) [hereinafter *"Lutyk"*] (expressing "some doubts" about whether a court has the authority to pierce the corporate veil to impose ERISA liability).

5. *See, e.g., Board of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.,* 296 F.3d 164 (3d Cir.2002) [hereinafter *Foodtown*] (reversing dismissal of a plaintiff's claims alleging alter ego liability for MPPAA withdrawal liability); *Schaffer v. Charles Benjamin, Inc.,* Civ. A. Nos. 90–6225, 91–6954, 1992 WL 59152 (E.D.Pa. March 18, 1992) (awarding judgment to the plaintiffs after a bench trial on their claims for alter ego liability and piercing the corporate veil seeking to recover MPPAA withdrawal liability); *see also Flynn v. R.C. Tile,* 353 F.3d 953 (D.C.Cir. 2004) (upholding summary judgment in favor of plaintiffs alleging alter ego liability under the MPPAA to recover delinquent contributions to a multiemployer pension plan); *Massachusetts Carpenters Central Collection Agency v. Belmont Concrete Corp.,* 139 F.3d 304 (1st Cir.1998) (same).

case law that must guide the Court's interpretation of these statutes.

### 1. *The Relevant Provisions of ERISA and the MPPAA*

■ ERISA was enacted in 1974 to "address the increasingly-apparent insecurity of workers' vested pension funds." *DiFelice v. Aetna U.S. Healthcare*, 346 F.3d 442, 454 (3d Cir.2003). Among its many provisions, ERISA "required employers to make contributions that would produce pension plan assets sufficient to meet future vested pension liabilities" and if a plan became insolvent, made "any employer who had withdrawn from the plan during the previous five years liable for a fair share of the plan's underfunding." *Milwaukee Brewery Workers' Pension Plan v. Jos. Schlitz Brewing Co.*, 513 U.S. 414, 416, 115 S.Ct. 981, 130 L.Ed.2d 932 (1995) (citations omitted).

Under ERISA as originally enacted, therefore, an employer could withdraw from an underfunded pension plan without any responsibility for the underfunding, as long as the plan remained solvent for five years after the withdrawal. *Id.* This liability structure encouraged "an employer to withdraw from a financially shaky plan and risk paying its share if the plan later became insolvent, rather than to remain and (if others withdrew) risk having to bear alone the entire cost of keeping the shaky plan afloat." *Id.* at 416–17, 115 S.Ct. 981.

To correct this problem, Congress passed the MPPAA in 1980 and "imposed a withdrawal charge on all employers withdrawing from an underfunded plan (whether or not the plan later became insolvent)." *Id.* at 417, 115 S.Ct. 981. This withdrawal liability represented the "pro rata share of the unfunded vested liability remaining in the fund at the time of withdrawal, subject to certain adjustments." *Board of Trustees of Trucking Employees of N. Jersey Welfare Fund Inc. Pension Fund v. Cen-*

*tra*, 983 F.2d 495, 498 (3d Cir.1992) [hereinafter *Centra* ]. The provision of the MPPAA establishing this liability is 29 U.S.C. § 1381(a): "If an employer withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal, then the employer is liable to the plan in the amount determined under this part to be the withdrawal liability."

The MPPAA, however, nowhere defines what constitutes an "employer" responsible for withdrawal liability. *Central Transport*, 85 F.3d at 1287. The definition section of the MPPAA defines a "substantial employer" for purposes of a single-employer plan, but does not define an employer, substantial or otherwise, for purposes of a multiemployer plan. 29 U.S.C. § 1301(a)(2). Another subchapter of ERISA, Title I, contains a definition section that defines an employer, 29 U.S.C. 1002(5), but that section's definitions are expressly limited to their own subchapter and do not apply to Title IV, which contains the MPPAA. *Mary Helen Coal Corp. v. Hudson*, 235 F.3d 207, 212 (4th Cir.2000) (holding definition of "employer" in ERISA Title I inapplicable to Title IV); *Korea Shipping Corp. v. New York Shipping Ass'n–Int'l Longshoremen's Ass'n Pension Trust Fund*, 880 F.2d 1531, 1536 (2d Cir.1989) (same, finding definition of an employer under MPPAA "must be left to the courts"); *see also Nachman Corp. v. Pension Guar. Benefit Bd.*, 446 U.S. 359, 370–71, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980) (cautioning that the definitions in Title I are "not necessarily applicable to Title IV").

The United States Court of Appeals for the Third Circuit has not yet addressed how, in the absence of a statutory definition, a court should define an "employer" under the MPPAA. The seven appellate courts that have addressed the definition of "employer" under the MPPAA have all

adopted the reasoning of the Court of Appeals for the Second Circuit, which, after looking to the "remedial and protective purposes" of the statute, held that an "employer" under the MPPAA was "a person who is obligated to contribute to a plan either as a direct employer or in the interest of an employer of the plan's participants." *Korea Shipping*, 880 F.2d at 1537.[6]

In addition to making the "employer" liable for withdrawal liability, ERISA and the MPPAA also extend liability to "trades or businesses (whether or not incorporated) which are under common control" with an employer. 29 U.S.C. § 1301(b)(1); *see also Centra*, 983 F.2d at 502. This "common control" provision was in ERISA as originally enacted. Employee Retirement Income Security Act of 1974, Pub.L. No. 93–406 § 4001(b), 88 Stat. 829 (1974).

The statute itself does not define "under common control," but instead authorizes the Pension Benefit Guaranty Corporation ("PBGC") to issue regulations defining "common control" that are to be "consistent and coextensive with" regulations promulgated by the Treasury Department under section 414(c) of the Internal Revenue Code ("IRC"), 26 U.S.C. § 414(c). The PBGC has issued the authorised regulations, codified at 29 C.F.R. §§ 4001.1–4001.3, which incorporate by reference regulations defining "common control" issued by the Internal Revenue Service pursuant to IRC § 414(c), codified at 26 C.F.R. §§ 1.414(c)–1 to 1.414(c)–5. *See IUE AFL–CIO Pension Fund v. Barker & Williamson, Inc.*, 788 F.2d 118, 123 (3d Cir.1986) [hereinafter *"Barker & Williamson"*] (discussing the previous version of the applicable regulations). These IRS regulations provide the definition of "common control" to be used in the MPPAA.

Under the operative definition of "common control" in the IRS regulations, companies are essentially held to be under common control when they are linked by a either a parent corporation or group of five or fewer individuals who control 80% of a company's voting shares or profits. 26 C.F.R. § 1.414(c)–2; *see, e.g., Doherty v. Teamsters Pension Trust Fund*, 16 F.3d 1386, 1390 n. 3 (3d Cir.1994). Because the MPPAA refers only to "trades or businesses" under common control, individual shareholders or officers are generally not liable for withdrawal liability under the MPPAA unless they can be considered sole proprietorships or can be reached through an alter ego or veil piercing theory. *See, e.g., Central States, SE & SW Areas Pension Fund v. Neiman*, 285 F.3d 587 (7th Cir.2002) [hereinafter *Neiman*] (considering whether individual owner constituted sole proprietorship and so could be liable as a trade or business under common control); *Solomon v. Klein*, 770 F.2d 352, 353–54 (3d Cir.1985) (holding individual shareholder could not be liable as an "employer" under Title I of ERISA, absent allegations that corporate veil should be pierced or that employer was an alter ego of the defendant); *see also* 29 C.F.R. § 4001.3(a)(3) (providing that an individual who owns the entire interest in an unincorporated trade or business shall be treated as his own employer).

## 2. *Prior Decisions Discussing Alter Ego and Veil Piercing under ERISA and the MPPAA.*

Neither the United States Supreme Court nor the Court of Appeals has yet

---

**6.** *See also Mary Helen Coal*, 235 F.3d at 212; *Central Transport*, 85 F.3d at 1287; *Seaway Port Auth. v. Duluth–Superior ILA Marine Ass'n Restated Pension Plan*, 920 F.2d 503, 507–08 (8th Cir.1990); *Carriers Container Council, Inc. v. Mobile S.S. Ass'n—Int'l Longshoreman's Ass'n, AFL–CIO Pension Plan & Trust*, 896 F.2d 1330, 1343 (11th Cir.1990); *Imel v. Laborers Pension Trust Fund for Northern Cal.*, 904 F.2d 1327, 1331 (9th Cir.1990).

directly addressed whether alter ego liability or veil piercing are available with respect to withdrawal liability under ERISA and the MPPAA. In several recent decisions, however, both have suggested that they may not be.

The Supreme Court has repeatedly described ERISA as a " 'comprehensive and reticulated statute,' the product of a decade of congressional study of the Nation's private employee benefit system" *Knudson*, 534 U.S. at 209, 122 S.Ct. 708 (quoting *Mertens*, 508 U.S. at 251, 113 S.Ct. 2063 quoting *Nachman*, 446 U.S. at 361, 100 S.Ct. 1723). Because of ERISA's comprehensiveness and the complicated balance it represents among competing interests, the Supreme Court has cautioned against judicial recognition of remedies not specifically authorized by its text: ERISA's "carefully crafted and detailed enforcement scheme provides strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly." *Knudson*, 534 U.S. at 209, 122 S.Ct. 708 (citations and internal quotations omitted).[7]

In its only decision discussing alter ego liability or veil piercing under ERISA, the Supreme Court refused to decide whether those remedies were permitted under the statute, finding subject matter jurisdiction lacking "[e]ven if ERISA permits a plaintiff to pierce the corporate veil to reach a defendant not otherwise subject to suit under ERISA." *Peacock*, 516 U.S. at 354, 116 S.Ct. 862.

Most recently, the United States Court of Appeals for the Third Circuit, citing *Peacock* and *Mertens*, has expressed doubts regarding a district court's authority to pierce the corporate veil and impose liability on a third-party not directly liable under ERISA. *Lutyk*, 332 F.3d at 193. In *Lutyk*, the trustees of a pension plan sued to recover unpaid benefit contributions from the president and sole shareholder of the delinquent company. After a bench trial, the district court found that the president was not liable as a fiduciary but found that the plaintiffs had proven facts sufficient to allow them to pierce the corporate veil and obtain judgment from the president. *Id.* at 189–91.

On appeal, the appellate court specifically called into question whether veil piercing or alter ego liability was authorized under ERISA, expressing "some doubts" as to whether it was and specifically dismissing as dicta suggestions in two prior cases that those remedies might be available under ERISA. *Id.* at 193, 193 n. 5 (discussing *Solomon*, 770 F.2d at 353–54 and *Central Pa. Teamsters Pension Fund v. McCormick Dray Line, Inc.*, 85 F.3d 1098, 1109 (3d Cir.1996)). The court, however, declined to address the issue, finding that it had not been raised by the appellant and had been waived.

---

**7.** In *Knudson*, the Court declined to interpret ERISA expansively to allow a benefit plan to sue to enforce a beneficiary's contractual agreement to reimburse it for money recovered in a tort suit. Finding the relief sought was not authorized under any specific provision of ERISA, the Court declined to permit it. *Id.* at 220, 121 S.Ct. 701. In *Mertens*, the Court declined to allow a suit under ERISA for a non-fiduciary's aiding and abetting a breach of fiduciary duty, finding that the action was not authorized by the text of the statute. *Id.* at 261–63, 113 S.Ct. 2063. In both cases, the Court rejected the argument that the remedies sought were necessary to prevent injured parties from being left without relief: "[E]ven assuming ... that petitioners are correct about ... the lack of other means to obtain relief, 'vague notions of a statute's 'basic purpose' are nonetheless inadequate to overcome the words of its text regarding the *specific* issue under consideration.' " *Knudson*, 534 U.S. at 221, 122 S.Ct. 708 (quoting *Mertens*, 508 U.S. at 261, 113 S.Ct. 2063) (emphasis and first ellipsis in original).

Set against the doubts expressed in *Peacock* and *Lutyk* about the availability of alter ego and veil piercing remedies under ERISA are numerous decisions that apply the two doctrines to suits under ERISA. *See, e.g., Foodtown,* 296 F.3d 164 and other cases cited at footnote 5, *supra.* The defendants argue strenuously, but incorrectly, that these cases, in particular *Foodtown,* are dispositive here. None of these cases, however, directly addresses whether alter ego liability or veil piercing are available under ERISA or the MPPAA or confronts the doubts expressed in *Peacock* and *Lutyk.* Instead, these cases assume the existence of alter ego liability or veil piercing under ERISA and the MPPAA and directly consider only the particular test to apply for these theories or the application of the facts of a case to a chosen test.

In *Foodtown,* for example, the United States Court of Appeals for the Third Circuit considered a district court's dismissal of a lawsuit that sought to hold the defendants liable for MPPAA withdrawal liability under theories of alter ego and veil piercing. The district court had dismissed for lack of standing, finding that the original employer was in bankruptcy and the only plaintiff with standing was the bankruptcy trustee. *Id.,* 296 F.3d at 167. The court of appeals reversed, finding that the plaintiff's claim was not the property of the bankruptcy estate. *Id.* at 170–71. The court of appeals then went on to consider whether the plaintiffs' alter ego and veil piercing claims should be dismissed for failure to state a claim. The court held that they did state a claim, but in doing so it considered only whether the plaintiffs had alleged the elements of piercing the corporate veil under New Jersey state law. *Id.* at 171–72.

The court of appeals in *Foodtown* did not consider whether veil piercing was available under ERISA or whether such a claim should be governed by New Jersey state law. A review of the appellate briefing in the case reveals that neither of these issues was ever raised on appeal. As the question of whether ERISA authorizes alter ego liability or veil piercing was "neither brought to the attention of the court nor ruled upon," *Foodtown* cannot be considered precedential on those issues. *Soyka v. Alldredge,* 481 F.2d 303 (3d Cir. 1973) (internal quotations omitted), *citing Webster v. Fall,* 266 U.S. 507, 511, 45 S.Ct. 148, 69 L.Ed. 411 (1925).

3. *The* Compton *Analysis for Determining the Existence of Alter Ego Liability for Veil Piercing under ERISA*

As neither *Lutyk* and *Peacock* nor *Foodtown* squarely addresses the issue, the Court must conduct an independent analysis of whether alter ego or veil piercing theories are available under ERISA and the MPPAA. The Court believes that the analysis it must apply is set out in *Reich v. Compton,* 57 F.3d 270 (3d Cir.1995) [hereinafter *"Compton"*].

In *Compton,* the Department of Labor sought to use an alter ego theory to expand the reach of 406(a)(1) of ERISA, 29 U.S.C. § 1106(a), which prohibits certain transactions between ERISA plans and "parties in interest." The Department of Labor contended that "alter egos" of "parties in interest" should also be subject to section 406(a)(1) and also prohibited from engaging in the specified transactions. The court of appeals rejected this argument as "inconsistent with clear congressional intent." *Id.* at 276.

In reaching this conclusion, the court considered several factors. Beginning with the text of the statute, the court noted that the applicable definition section of ERISA provided "a long and detailed definition" of a "party in interest" and that this "seem-

ingly comprehensive" definition did not include the alter ego of a party in interest. *Id.* at 277. The court also noted that the proposed addition of alter egos would "substantially overlap" several of the categories already specifically listed in the statutory definition. *Id.* Citing *Mertens,* the court concluded that allowing alter ego liability would "upset the carefully crafted and detailed legislative scheme" reflected in the statutory definition of a party in interest. *Id.* Finally, the court noted that there was no single body of alter ego law that applies in all contexts, but instead the principles governing alter ego liability "vary depending on the legal context in which the determination takes place." *Id.* at 278. Consequently, applying alter ego liability to the party in interest provisions of ERISA would require a court to evaluate the purposes or policy behind those provisions to determine the appropriate test for liability. The *Compton* court held that this very determination had already been made by Congress in adopting ERISA's detailed definition of party in interest. *Id.*[8]

### 4. The Availability of Alter Ego Liability under the MPPAA

■ Applying the reasoning of *Compton* here, the Court concludes that ERISA and the MPPAA permit a plaintiff to seek to collect withdrawal liability under theories of alter ego liability and piercing the corporate veil. The analysis, however, differs for each of the two theories.

As discussed above in the section on jurisdiction, alter ego liability is predicated on the theory that the defendant and the company originally subject to liability are the same entity. *Elite Erectors,* 212 F.3d at 1038. In the context of MPPAA withdrawal liability, an alter ego claim is alleging that the defendant is the same entity as the "employer" liable for withdrawal liability under 29 U.S.C. § 1381(a).

Under *Compton,* analyzing the availability of alter ego liability begins with the text of the relevant statutory provisions. Here, unlike the "seemingly comprehensive" "party in interest" provisions at issue in *Compton,* there is no statutory definition of an "employer" under the MPPAA. Defining an "employer" for purposes of

**8.** One other decision of the United States Court of Appeals for the Third Circuit has considered whether alter ego liability is authorized under a different federal labor statute, the Worker Adjustment and Retraining Notification Act of 1988, 29 U.S.C. § 2101, *et seq.* ("the WARN Act"). *Pearson,* 247 F.3d 471. The WARN Act requires employers to provide workers with notice prior to a plant closing or layoff and provides for damages if they do not. The Department of Labor issued regulations setting out the circumstances under which a related corporation could be liable for another's damages under the Act, based on the integrated enterprise test frequently used in federal labor law. *Id.* at 477. Some courts had also extended WARN Act liability to lenders using versions of a very limited "alter ego" theory, one the court describes as "far less hospitable to plaintiffs than labor law's 'integrated enterprise' test, and, apparently, than the Department of Labor factors." *Id.* Reviewing the various alter

ego tests applied by the federal courts, the *Pearson* court concluded that the lack of uniformity among the tests was "manifestly unworkable" and held that the "most prudent course" was for courts to apply only those factors listed in the Department of Labor guidelines. *Id.* at 489–90.

*Pearson* is of only limited usefulness in determining the availability of alter ego liability or veil piercing under the MPPAA. Unlike the sections of the MPPAA at issue here, the Department of Labor regulations at issue in *Pearson* already incorporated a version of the alter ego doctrine taken from the "integrated enterprise" test of federal labor law. Accordingly, the additional alter ego tests at issue in *Pearson* substantially overlapped the existing regulations. Here, in contrast, the MPPAA definitions of "employer" and "trades or businesses under common control" do not already reflect an alter ego concept and any overlap is much less substantial.

withdrawal liability has been "left to the courts." *Korea Shipping*, 880 F.2d at 1536. Here, there is, therefore, no overlap between alter ego liability and any existing definition of an employer, nor is there a "carefully crafted and detailed legislative scheme" that would be upset by allowing alter ego liability.

A court allowing alter ego liability under the MPPAA would still face the difficult problem of choosing between the several alternate tests for that liability that have been articulated in the federal courts. But here, unlike *Compton*, choosing between the different tests based on the purpose and policy behind withdrawal liability would not revisit a choice Congress had already made. Congress left open the definition of an "employer" subject to withdrawal liability. In such a situation, a court must "must borrow from traditional common law to develop the necessary federal common law for interpreting the statutory language," but the "reliance on such common law, however, must be consistent with ERISA's and the MPPAA's provisions and underlying policies." *Barker & Williamson*, 788 F.2d at 124 (defining the statutorily undefined word "option" for purposes of withdrawal liability under the MPPAA).

Here, interpreting an "employer" subject to withdrawal liability to include an "alter ego" of that employer accords with federal common law and the purposes and policies behind ERISA and the MPPAA. Both alter ego liability and veil piercing are recognized under federal common law. *Lutyk*, 332 F.3d at 193–94; *Pearson*, 247 F.3d at 484–85 (collecting cases); *United States v. Pisani*, 646 F.2d 83, 87–88 (3d Cir.1981) (interpreting a Medicare reimbursement statute to allow veil piercing under federal common law).

Recognizing alter ego liability under the MPPAA would further the policy and purpose of the statute. The general purpose of the MPPAA is to protect the solvency of multiemployer pension plans. *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., Inc.*, 522 U.S. 192, 196, 118 S.Ct. 542, 139 L.Ed.2d 553 (1997). One of the principal ways the statute does this is by imposing withdrawal liability on employers leaving the plans. Interpreting an "employer" responsible for withdrawal liability to include alter egos of the employer furthers the purpose of the statute by preventing a company from avoiding liability by shifting assets to its alter ego. Moreover, because alter ego liability is predicated on the alter ego being essentially the same entity as the employer, interpreting the MPPAA to allow it should not unduly expand the reach of withdrawal liability.

■ For these reasons, the Court believes, under the analysis set out in *Compton*, that the MPPAA permits a plaintiff to bring a claim for alter ego liability alleging that a defendant is the alter ego of the statutory employer. This same analysis, however, dictates that the MPPAA will not permit a plaintiff to bring a claim for alter ego liability alleging that a defendant is the alter ego of a trade or business "under common control" with a statutory employer. Unlike the term "employer," entities under "common control" are defined in the statute, in a "seemingly comprehensive" list set out in authorized regulations of the Internal Revenue Service. As in *Compton*, allowing liability to be imposed on an alter ego of an entity "under common control" would effectively add another, overlapping category to the existing list. With respect to entities under common control, the MPPAA does set out a "carefully crafted and detailed legislative scheme" whose balance of competing interests courts "should not attempt to adjust." *Compton*, 57 F.3d at 277 (citation and internal quotation omitted).

Here, the plaintiffs have alleged that "[t]here is such a unity of interest and ownership between the Corporate Defendants, NPR, and the other entities ostensibly owned by them, that the immediately aforementioned companies, the Corporate Defendants and the Individual Holt Defendants have effectively merged into a single enterprise akin to a partnership under which separate personalities of the corporations do not exist." Complaint at ¶ 28. To the extent that the plaintiffs are alleging that all of the corporate defendants are "alter egos" of NPR, the statutory employer, this allegation is permissible under the MPPAA and states a claim. To the extent, however, that the plaintiffs' complaint can be read as alleging that the corporate defendants are also liable under the MPPAA because they are alter egos of "other entities" that may be under common control with NPR, such an allegation would be impermissible under the MPPAA.

### 5. *The Availability of Veil Piercing Under the MPPAA*

■ Determining whether veil piercing is available under the MPPAA is a more difficult question than the determination as to alter ego. Because alter ego liability is directed toward proving that a defendant and a statutory employer are the same entity, it implicates the statutory definition of employer. As Congress left the term "employer" undefined, there is relatively little conflict between alter ego liability and the existing statutory language. Veil piercing, in contrast, is less directed to showing that the defendant and the employer are the same entity than to the separate but related question of whether the defendant ought to be responsible for the employer's liability. This poses a po-

tential for conflict with the statutory language imposing withdrawal liability on trades and businesses under "common control" with the employer.

Like the definition of parties in interest in *Compton,* the regulations defining a trade or business under common control are extensive and seemingly comprehensive. The regulations also have the potential to overlap a veil piercing analysis because both the common control regulations and veil piercing look to the degree to which one corporation exercises effective control over another. *Compare* 26 C.F.R. § 1.414(c)–2 (common control regulations) *with Pearson* at 484–85 (setting out elements of veil piercing). In one significant respect, however, a veil piercing analysis and the common control provisions do not overlap at all. The common control provisions explicitly do not apply to individuals, but only to "trades or businesses."[9] 29 U.S.C. § 1301(b)(1). Thus, they do not overlap claims, like this one, that seek to pierce the corporate veil to hold individuals liable.

The legislative history of the common control provisions indicate that Congress enacted them "in order to prevent businesses from shirking their ERISA obligations by fractionalizing operations into many separate entities." *Board of Trustees of the Western Conference of Teamsters Pension Trust Fund v. H.F. Johnson, Inc.,* 830 F.2d 1009, 1013 (9th Cir. 1987), *citing* S.Rep. No. 93–383 ("the committee … intends to make it clear that the coverage and antidiscrimination provisions cannot be avoided by operating through separate corporations instead of separate branches of one corporation"), *reprinted in* 1974 U.S.C.C.A.N. 4639, 4890, 4928; *see also Neiman,* 285 F.3d at 590. *Solomon,* 770 F.2d at 354.

---

**9.** Similarly, an "employer" under the MPPAA refers only to businesses, not to individuals.

This purpose may explain why the provisions are limited to corporations: as a practical matter, a business cannot evade liability by fractionalizing operations into individuals. Thus, the omission of individuals from the "common control" provisions appears to be not a conscious decision by Congress to exclude them from liability, but a reflection of the provisions' relatively narrow purpose of preventing companies from escaping liability by dividing themselves into separately incorporated subdivisions. The Court has found nothing in the legislative history of the MPPAA that would indicate Congress intended to foreclose the use of veil piercing and allow individuals who abused the corporate form to escape liability.

Although mindful of the United States Supreme Court's admonition in *Knudson* and *Mertens* that the comprehensive nature of ERISA cautions against reading remedies into the Act that are not reflected in the statutory text, the Court cannot conclude that Congress intended to preclude recourse to piercing the corporate veil, at least as to individual owners, in circumstances where the stringent standards for such liability are met. *Cf. Pearson*, 247 F.3d at 485 (describing veil piercing standards as "notoriously difficult for plaintiffs to meet"). The Court also reaches this conclusion conscious of the large number of courts who have applied the doctrines of alter ego and veil piercing to liability under ERISA and the MPPAA, although without directly considering whether those doctrines were available under those statutes.

Accordingly, although the question is a close one, the Court concludes that piercing the corporate veil is permissible under the MPPAA and that the plaintiffs have stated a claim for veil piercing against the individual defendants.

An appropriate Order follows.

*ORDER*

AND NOW, this 29th day of August, 2005, upon consideration of the Motion to Dismiss Filed by Orchard Hill Development Corporation and Thomas Holt, Sr. (Docket No. 9); and the Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6) Filed by Defendants Astro Holdings, Inc., Broad & Washington Corp., Camden Refrigerating & Terminals Corp., Cresmont Limited Partnership, Delaware Avenue Enterprises, Inc., Dockside Refrigerated Warehouses of Philadelphia, Inc., Express Equipment Rental Co., Inc., Essex Enterprises, Inc., Gloucester Marine Terminal Inc., Gloucester Refrigerated Warehouse, Inc., SLS Services, Inc., Holt Logistics Corp. (f/k/a Oversight & Logistical Technologies, Inc.), OAE, Inc., Portside Refrigerated Services, Inc., The Tanglefoot Corp., Triple Seven Warehousing, Inc, Thomas Holt, Jr, Leo Holt, and Michael Holt (Docket No. 10), and the plaintiffs' response thereto, and after a hearing held June 9, 2005, it is hereby ORDERED that the Motions are DENIED for the reasons set out in the accompanying Memorandum.