In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3410

Board of Trustees, Sheet Metal Workers'
National Pension Fund, et al.,

Plaintiffs-Appellants,

v.

Elite Erectors, Inc., Skylight Consultants
of America, Inc., and Mary Lowry,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. IP 98-298-C H/G--David F. Hamilton, Judge.

Argued March 30, 2000--Decided May 16, 2000

Before Harlington Wood, Jr., Easterbrook, and Kanne,
Circuit Judges.

Easterbrook, Circuit Judge.  Elite Erectors, which installed skylights, was obliged under collective bargaining agreements to contribute to the Sheet Metal Workers' National Pension Fund and other trusts covered by ERISA. When Elite went out of business it owed plaintiffs (collectively "the Funds") about $18,000. ERISA allows litigation "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found". 29 U.S.C. sec.1132(e)(2). Plaintiffs, which are administered in Alexandria, Virginia, filed their suit in the United States District Court for the Eastern District of Virginia. Elite Erectors defaulted. Before the district court entered judgment, the Funds amended their complaint to name Skylight Consultants of America, Inc., and Mary Lowry as Elite's alter egos. Skylight and Lowry also defaulted, and the district court eventually entered judgment holding all three jointly and severally liable to the Funds.

Just as they had ignored the suit, Elite, Skylight, and Lowry ignored the judgment: they neither appealed nor paid. After registering the judgment in the United States District Court for the Southern District of Indiana, where Lowry lives and Skylight carries on a business, see 28

U.S.C. sec.1963, the Funds initiated collection proceedings. At last stirred to action, Skylight and Lowry (who, unlike Elite, are solvent) filed a motion under Fed. R. Civ. P. 60(b)(4), asking the district judge in Indiana to declare the Virginia judgment void because, they asserted, the Eastern District of Virginia lacked personal jurisdiction over them. Skylight and Lowry did not deny that they had been served with process but observed that neither carried on any business in Virginia. This much the Funds concede; they rely, however, on another portion of sec.1132(e)(2), which says that in a collection action by a pension or welfare plan "process may be served in any other district where a defendant resides or may be found." That nationwide-service clause enabled the Eastern District of Virginia to acquire personal jurisdiction, the Funds contended, and required Skylight and Lowry to litigate in Virginia whether they were Elite's alter egos. But the district judge in Indiana concluded that Skylight and Lowry could be defendants in Virginia only if they actually were Elite's alter egos. Just as Skylight and Lowry had declined to join issue on that subject in Virginia, the Funds declined to join issue in Indiana, deeming the subject foreclosed by the Virginia judgment. Considering only the arguments and evidence presented by Skylight and Lowry, the district judge in Indiana concluded that they were not Elite's alter egos and therefore had not been subject to suit in Virginia. 46 F. Supp. 2d 852, reconsideration denied, 64 F. Supp. 2d 839 (1999). Because the Virginia court lacked personal jurisdiction over Skylight and Lowry, the Indiana judge held, its judgment is void with respect to them.

Logically the first question is whether a district court in which a judgment is registered under sec.1963 may modify or annul that judgment under Rule 60(b). Some courts have held that the final sentence of sec.1963 para.1--"A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner."--means that the original judgment becomes a judgment of the court in which it has been registered, and therefore may be modified or set aside by the court of registration. See Rector v. Peterson, 759 F.2d 809 (10th Cir. 1985); Covington Industries, Inc. v. Resintex A.G., 629 F.2d 730 (2d Cir. 1980). But sec.1963 does not say that the original judgment becomes a local one; it says that the original judgment has the effect of a local judgment. This is a substantial difference, because the registered judgment does not lose its existence in the court that rendered the decree. Could the Southern District of Indiana tell the Eastern District of

Virginia that it may not enforce its own judgment if, for example, Skylight or Lowry should have assets in Virginia? A judgment may be registered in many districts, see Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 11 Federal Practice and Procedure sec.2787 (2d ed. 1995), and it would not make much sense to allow each of these districts to modify the judgment under Rule 60(b), potentially in different ways. Rector and Covington state a minority view. Other circuits conclude (with the support of Wright & Miller, Federal Practice at sec.2865) that requests for modification under Rule 60(b) must be presented to the rendering court. E.g., Indian Head National Bank of Nashua v. Brunelle, 689 F.2d 245 (1st Cir. 1982); First Beverages, Inc. v. Royal Crown Cola Co., 612 F.2d 1164, 1172 (9th Cir. 1980). This circuit is among the majority that require Rule 60(b) motions to be presented to the rendering court. Fuhrman v. Livaditis, 611 F.2d 203, 204-05 (7th Cir. 1979). Cf. Harris Trust & Savings Bank v. Ellis, 810 F.2d 700, 705-06 (7th Cir. 1987).

None of the parties alerted the district judge to Fuhrman and similar cases; the Funds did not question the employment of Rule 60(b)(4), only the district court's conclusion that the Eastern District of Virginia lacked jurisdiction over Skylight and Lowry. Still, the Southern District of Indiana was free to disregard the judgment, without formally annulling it under Rule 60(b)(4), if the rendering court lacked jurisdiction. Adam v. Saenger, 303 U.S. 59, 62 (1938); Hanes Supply Co. v. Valley Evaporating Co., 261 F.2d 29 (5th Cir. 1958). A motion in the registration court under Rule 60(b)(4) is functionally identical to a motion to preclude enforcement under Adam; perhaps this is why In re Joint Eastern & Southern District Asbestos Litigation, 22 F.3d 755, 762 n.15 (7th Cir. 1994), approved the practice. Whether or not the district court enters an order under Rule 60(b)(4), principles of issue preclusion would prevent relitigation of the jurisdictional question in other courts of registration.

"A party that simply refuses to appear may contend in a later case that the first tribunal lacked jurisdiction--though jurisdiction is the only issue thus preserved, and if the first court had jurisdiction then the judgment must be enforced. See Earle v. McVeigh, 91 U.S. 503, 507 (1875); Williams v. General Electric Capital Auto Lease, Inc., 159 F.2d 266 (7th Cir. 1998); Metropolitan Life Insurance Co. v. Cammon, 929 F.2d 1220, 1222-23 (7th Cir. 1991). . . . [O]therwise a court that lacked jurisdiction could strong-arm a party to litigate the subject, decide in favor of its own power, and thus block any review of its adjudicatory competence."

United States v. Cook County, 167 F.3d 381, 388 (7th Cir. 1999) (emphasis in original). Skylight and Lowry, who did not appear in the Virginia action, therefore are entitled to resist enforcement in Indiana if, but only if, the United States District Court for the Eastern District of Virginia lacked personal or subject-matter jurisdiction.

The district judge in Indiana concluded that personal jurisdiction could be established in Virginia only if Skylight and Lowry were Elite's alter egos, as the Funds' complaint asserted. This interprets sec.1132(e)(2) as if it allowed nationwide service (and thus personal jurisdiction) only with respect to "employers" or, more generally, "persons liable under ERISA"--a step that would conflate jurisdiction with the merits. Section 1132(e)(2) does not say this; it provides nationwide service to bring "a defendant" into the action. Whether the defendant is liable under ERISA is the subject to be litigated following service; it is not a condition precedent to personal jurisdiction. The Indiana judge gave an unnatural reading to sec.1132(e)(2) in order to avoid what he perceived to be a constitutional problem. Ambiguous language that is constitutional when read one way and unconstitutional when read another properly may be understood the first way; judges assume that Congress did not set out to transgress constitutional limits. But the constitutional penumbra is large; almost any statute can be thought to raise "constitutional issues," and treating these as license to rewrite the law would divest Congress of effective lawmaking power. Judges therefore must not manufacture ambiguity or disregard straightforward language. United States v. Marshall, 908 F.2d 1312, 1318 (7th Cir. 1990) (en banc), affirmed under the name Chapman v. United States, 500 U.S. 453, 464 (1991). "[A]voidance of a difficulty will not be pressed to the point of disingenuous evasion." Rust v. Sullivan, 500 U.S. 173, 191 (1991). Section 1132(e)(2) does not require or tolerate creative interpretation. "Defendant" means defendant; Skylight and Lowry were defendants in the Virginia action and were served with process under sec.1132(e)(2); the district court therefore had personal jurisdiction unless sec.1132(e)(2) violates the Constitution.

Three other circuits have held that sec.1132(e)(2) and its counterpart 29 U.S.C. sec.1451(d) (which applies exclusively to multi-employer plans such as the Funds) comport with all constitutional requirements. United Electrical Workers v. 163 Pleasant Street Corp., 960 F.2d 1080, 1085 (1st Cir. 1991); IUE AFL-CIO

Pension Fund v. Herrmann, 9 F.3d 1049, 1056-57 (2d Cir. 1993); Bellaire General Hospital v. Blue Cross Blue Shield of Michigan, 97 F.3d 822, 825-26 (5th Cir. 1996). Cf. Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 942-48 (11th Cir. 1997) (holding sec.1132(e)(2) valid unless it causes a "severe disadvantage" to defendant). Although we have not previously addressed this question under ERISA, we have concluded that nationwide service under other statutes is proper, as long as the defendants have adequate contacts with the United States as a whole. E.g., United Rope Distributors, Inc. v. Seatriumph Marine Corp., 930 F.2d 532, 534 (7th Cir. 1991) (admiralty); Lisak v. Mercantile Bancorp, Inc., 834 F.2d 668, 671-72 (7th Cir. 1987) (RICO); Fitzsimmons v. Barton, 589 F.2d 330, 332-34 (7th Cir. 1979) (securities laws). United States v. Union Pacific R.R., 98 U.S. 569, 603-04 (1878), holds that Congress may make a court in Washington, D.C., the exclusive forum for certain claims arising under federal law, which makes it hard to see how litigation across the Potomac in Alexandria--part of the District until its retrocession to Virginia in 1847--could be unconstitutional.

One court of appeals recently disagreed. Relying principally on a passage in Omni Capital International v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987), the tenth circuit has concluded that the defendant must have adequate contacts with the federal district in which the litigation will occur, and not just with the United States as a whole. Peay v. Bellsouth Medical Assistance Plan, 205 F.3d 1206 (10th Cir. 2000). Recognizing that there were many contrary decisions, Peay disagreed particularly with In re Federal Fountain, Inc., 165 F.3d 600 (8th Cir. 1999) (en banc) (bankruptcy law), and Bellaire. Although we have given its analysis respectful attention, Peay does not persuade us to abandon Fitzsimmons and its successors in and out of this circuit.

Linking personal jurisdiction to a defendant's "contacts" with the forum developed in state litigation. Due process limitations on adjudication in state courts reflect not so much questions of convenience as of jurisdictional power. Barrow, Alaska, is farther from Juneau than Indianapolis is from Alexandria, and travel from Barrow to Juneau is much harder than is travel from Indianapolis to Alexandria (there are no highways and no scheduled air service from Barrow to anywhere), yet no one doubts that the Constitution permits Alaska to require any of its citizens to answer a complaint filed in Juneau, the state capital, just as the United States confines some kinds of federal cases to Washington, D.C., on the eastern seaboard.

Conversely Kentucky's proximity to southern Indiana (Louisville would be more convenient for residents of New Albany than tribunals in Indianapolis) does not permit Kentucky to adjudicate the rights of people who have never visited that state or done business there; its sovereignty stops at the border. Limitations on sovereignty, and not the convenience of defendants, lie at the core of cases such as Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985), and World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980), and their many predecessors.

No limitations on sovereignty come into play in federal courts when all litigants are citizens. It is one sovereign, the same "judicial Power," whether the court sits in Indianapolis or Alexandria. Peay did not deny this. Instead it relied on the observation in Omni Capital, 484 U.S. at 104, that restrictions on state adjudication enable litigants to preserve their liberty and property from arbitrary confiscation. No one doubts this; Congress could violate the due process clause by requiring all federal cases to be tried in Adak (the westernmost settlement in the Aleutian Islands), because transportation costs easily could exceed the stakes and make the offer of adjudication a mirage. But this principle is unrelated to any requirement that a defendant have "contacts" with a particular federal judicial district and does not block litigation in easy-to-reach forums. A defendant who lives in Springfield, in the territory of the United States District Court for the Central District of Illinois, may be required to defend in Chicago (part of the Northern District) without any constitutional objection on the ground of undue inconvenience--even if the defendant has never been to Chicago and has no "contacts" with the Northern District--just as Illinois could allocate the bulk of litigation among its citizens to Chicago (or require residents of Chicago to visit Springfield, where the Supreme Court of Illinois sits).

Congress has not sought to throw litigants' convenience to the winds or use transportation costs to resolve small-stakes cases by default. Venue under 28 U.S.C. sec.1391 usually respects defendants' interests. See Stafford v. Briggs, 444 U.S. 527 (1980). Even when Congress departs from sec.1391 by allowing venue in the district of the plaintiff's business or residence, defendants' legitimate interests are protected by 28 U.S.C. sec.1404(a): "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Easy air

transportation, the rapid transmission of documents, and the abundance of law firms with nationwide practices, make it easy these days for cases to be litigated with little extra burden in any of the major metropolitan areas. If Alexandria was particularly inconvenient for Skylight and Lowry--and if it was "in the interest of justice" for the Funds to bear the incremental burden of litigating in Indiana, rather than for Skylight and Lowry to bear the incremental burden of litigating in Virginia-- then a motion under sec.1404(a) would have been in order. Counsel for Skylight and Lowry could have filed the motion by mail, without stepping outside the Southern District of Indiana. Moreover, if defending in Alexandria imposed extra costs on Skylight and Lowry, and if, as they say, the Funds hadn't a leg to stand on substantively, then Skylight and Lowry could have litigated on the Funds' dime--for prevailing parties in ERISA collection actions recover the attorneys' fees necessary to fend off weak claims. 29 U.S.C. sec.1132(g). Because 28 U.S.C. sec.1404 and 29 U.S.C. sec.1132(g) protect defendants' interests, sec.1132(e)(2) comports with the Constitution and provided the Eastern District of Virginia with personal jurisdiction over Skylight and Lowry even on the assumption that neither has any "contacts" with Virginia.

   Although Skylight and Lowry persuaded the Indiana court that the Virginia court lacked personal jurisdiction over them, their arguments on appeal center on subject-matter jurisdiction. Invoking Peacock v. Thomas, 516 U.S. 349 (1996), and Levit v. Ingersoll Rand Financial Corp., 874 F.2d 1186, 1192-94 (7th Cir. 1989), they contend that state rather than federal law governs vicarious liability for debts under ERISA. Cf. Kokkonen v. Guardian Life Insurance Co., 511 U.S. 375 (1994). If their liability turns on state law, then the Virginia court may have lacked subject-matter jurisdiction over them--for, although the parties may be of diverse citizenship, the amount in controversy does not exceed $75,000. See 28 U.S.C. sec.1332. We say "may have" because the Funds' claim against Elite unquestionably arose under federal law, and 28 U.S.C. sec.1367(a) creates supplemental jurisdiction over claims against other defendants to the extent that they "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." See Stromberg Metal Works, Inc. v. Press Mechanical, Inc., 77 F.3d 928 (7th Cir. 1996). We need not decide, however, whether the claim against Elite, Skylight, and Lowry was a single controversy, because the Funds' entitlements vis a vis Skylight and Lowry

independently arise under ERISA.

Peacock concludes that efforts to hold corporate officers vicariously liable for their firms' pension debts arise under state rather than federal law, and that an effort to "pierce the corporate veil" to collect a judgment under ERISA therefore belongs in state court. Several of our decisions remark that this conclusion does not affect supplemental jurisdiction under sec.1367. Thus federal courts may entertain vicarious-liability theories in a single suit. Peacock is limited, we have held, to successive litigation. Wilson v. Chicago, 120 F.3d 681, 683-85 (7th Cir. 1997); see also Citizens Electric Corp. v. Bituminous Fire & Marine Insurance Co., 68 F.3d 1016 (7th Cir. 1995). But there is a deeper problem with defendants' position--they do not appreciate the difference between vicarious and direct liability.

Efforts to pierce the corporate veil ask a court to hold A vicariously liable for B's debt. If federal law does not establish vicarious liability, then the request must rest on state law; what other source could it have? But a contention that A is B's "alter ego" asserts that A and B are the same entity; liability then is not vicarious but direct. Varity Corp. v. Howe, 516 U.S. 489, 492 (1996) (applying this principle, initially developed in federal labor law, to ERISA litigation); Central States Pension Fund v. Central Transport, Inc., 85 F.3d 1282, 1286-87 (7th Cir. 1996). See also, e.g., Howard Johnson Co. v. Hotel Employees, 417 U.S. 249, 259 n.5 (1974); United States v. Vitek Supply Corp., 151 F.3d 580, 584-85 (1998); Reich v. Sea Sprite Boat Co., 50 F.3d 413 (7th Cir. 1995). All liability under ERISA is federal; a claim "arises under" federal law when federal law creates the right of action, see Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804, 808 (1986), and the Funds contended in Virginia that they were entitled to collect under ERISA.

Consider, for example, the situation in United States v. Bestfoods, 524 U.S. 51 (1998): the United States claimed that Bestfoods, parent corporation to the operator of a polluted site, was obliged to clean up that site. The Court replied that if the parent corporation just operated a subsidiary that owned polluting assets, then it would be liable only if the corporate veil could be pierced; but if the parent actively exercised control over the assets themselves, then it would be directly liable under federal law. Even veil-piercing likely would be subject to federal law--though the Court reserved the possibility that federal law would be based on state-law principles. 524 U.S. at 63-

64 n. 9. But when the parent and subsidiary are just alter egos, then everything depends on, and the claim arises under, federal law. Just so here. The Funds claimed in Virginia that ERISA required Skylight and Lowry to pay them about $18,000. That may be right or wrong under ERISA, but it was a federal rather than a state-law claim.

Skylight and Lowry have one final sally: even if a contention that defendants are alter egos of an employer (and thus employers themselves) arises under ERISA, the Funds' complaint in Virginia did not allege all components of alter ego status. This supposes that complaints must allege each "element" of a "cause of action," the norm in code pleading. But we have rejected this proposition for federal litigation in general, and ERISA in particular. Bartholet v. Reishauer A.G. (Zurich), 953 F.2d 1073, 1077-78 (7th Cir. 1992). See also, e.g., Walker v. National Recovery, Inc., 200 F.3d 500 (7th Cir. 1999); Bennett v. Schmidt, 153 F.3d 516 (7th Cir. 1998). A complaint just initiates a case; it need not set out all of the applicable law or facts, provided it notifies the defendant of the claim's nature. Fed. R. Civ. P. 8. Even if the Funds' complaint was subject to dismissal under Fed. R. Civ. P. 12(b)(6), that shortcoming would not have affected the district court's subject-matter jurisdiction. Skylight and Lowry appear to believe that whenever a claim flops, it also falls out of federal jurisdiction. That's not so; there is a gulf between "deficient" and "too feeble to invoke federal jurisdiction." Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 89-90 (1998); Bell v. Hood, 327 U.S. 678, 682-83 (1946). Perhaps the Funds would not have been able to prove that Elite, Skylight, and Lowry are just different manifestations of the same entity. Cf. Papa v. Katy Industries, Inc., 166 F.3d 937 (7th Cir. 1999) (defining the extent of a single employer for purposes of employment-discrimination law). But defendants did not put the Funds to their proof, and the complaint is not so loopy that it failed to establish federal subject-matter jurisdiction. Because the Virginia district court had jurisdiction, the Indiana district court must enforce the judgment.

Reversed and Remanded