**FIDELITY NATIONAL FINANCIAL, INC., a Delaware corporation, Fidelity Express Network, Inc., a California corporation, Plaintiffs,**

v.

**Colin H. FRIEDMAN, et al., Defendants.**

**No. MC 11–00072–PHX–RCB.**

United States District Court, D. Arizona.

April 9, 2013.

Charles H. Oldham, Mariscal Weeks McIntyre & Friedlander PA, Phoenix, AZ, Michael G. King, Thomas H. Case, Hennelly & Grossfeld LLP, Marina Del Rey, CA, for Plaintiffs.

David Mark Bass, Janine F. Cohen, David M. Bass & Associates Incorporated, Los Angeles, CA, for Defendants.

## ORDER

ROBERT C. BROOMFIELD, Senior District Judge.

This dispute, now in its second decade, pertains to the latest attempt by plaintiffs, Fidelity National Financial, Inc. and Fidelity Express Network, Inc. ("Fidelity"), to enforce a judgment. Fidelity obtained that judgment which, with interest, now totals over $10 million dollars, against defendants Colin H. Friedman, Hedy Kramer Friedman, Farid Meshkatai, and Anita Kramer Meshkatai [1] following a trial in the United States District Court for the Central District of California (the "California judgment"). California, as the rendering court, entered that judgment on July 12, 2002. As 28 U.S.C. § 1963 allows, Fidelity registered its California judgment in this Arizona district court. The Certification of Judgment issued by the California court, along with an order of that court allowing Fidelity to register its judgment in this district court, although the action was on appeal, was entered here on November 18, 2002 (the "First Arizona Registered Judgment"). In accordance with A.R.S. § 12–1551(B), that judgment would "become[ ] unenforceable after five years from the date of entry unless action [wa]s taken to renew it." *Fidelity National Financial, Inc. v. Friedman*, 855 F.Supp.2d 948, 963 (D.Ariz.2012) ("*Fidelity V*")

(quoting *In re Smith*, 209 Ariz. 343, 101 P.3d 637) (other citation omitted). Put differently, absent renewal, the Arizona registered judgment would have expired on November 18, 2007.

Fidelity attempted renewal on April 5, 2007, by filing what this court has previously referred to as "the 2007 Certification[.]" *Fidelity V*, 855 F.Supp.2d at 954. Eventually, this court vacated that 2007 Certification, holding that although Fidelity permissibly re-registered the First Arizona Registered Judgment pursuant to 28 U.S.C. § 1963, that re-registration was not timely under Arizona law. *See id.* at 968–979.

In the interim, on May 26, 2011, Fidelity filed a certification of the California Judgment in the United States District Court for the Western District of Washington (the "Washington Registered Judgment" [2] ). *Fidelity Nat. Financial, Inc. v. Friedman*, No. 2:11–mc–0072 (W.D.Wash.). Several months later, on July 7, 2011, Fidelity filed the Washington Registered Judgment in this court (the "Second Arizona Registered Judgment" [3]). Currently pending before the court is defendants' "motion ... for relief from judgment pursuant to Rule 60(B) [sic] of the Federal Rules of Civil Procedure; and/or to vacate the certification of judgment for registration in another district[,]" Mot. 9 at 1:14–17 (emphasis omitted), "and relieve the[m] ... from any judgment created as a result of that filing." *Id.* at 9:21–23.[4]

---

[1]. More specifically, that judgment was rendered against "Colin H. Friedman, individually and as trustee of the Friedman Family Trust UDT, ..., Hedy Kramer Friedman, individually and as trustee of the Friedman Family Trust UDT, ..., Farid Meshkatai, and Anita Kramer Meshkatai, individually and as trustee of the Anita Kramer Living Trust ..., and each of them, jointly and severally[.]" Certification (Doc. 1) at 2–3.

[2]. This designation is for convenience only and it shall not be accorded any legal significance.

[3]. Again, this designation is for convenience only and it shall not be accorded any legal significance.

[4]. For ease of reference, all citations to page numbers of docketed items are to the page assigned by the court's case management and electronic case filing (CM/ECF) system.

## *Background*

The long and somewhat convoluted history of Fidelity's attempts to enforce the California judgment have been chronicled in prior decisions of this court and others, familiarity with which is presumed. More recently, as just mentioned, on May 26, 2011, in the Western District of Washington, Fidelity filed a "Certification of Judgment For Registration In Another District[.]" *Fidelity,* No. 2:11–mc–0072 (W.D.Wash.) (Doc. 1) That Certification, dated March 7, 2011, was issued by the Clerk of the California court, and indicated that a certified copy of the California judgment was attached thereto. *Id.* The defendants were not served with the Washington Registration until nearly nine months later—on December 1, 2011. *See* Jike Decl'n (Doc. 16–1) at 2, ¶ 4, and exh. A thereto (Doc. 16–2) at 2–3.

Thereafter, on July 7, 2011, in this Arizona district court, Fidelity filed the exact same Certification of Judgment, attaching the California judgment, which it had previously filed in the Washington Court. That particular certification was certified by the Clerk of the Court for the Western District of Washington, however. Certification (Doc. 1) at 1. Again, there was a delay in service upon the defendants. They were not served with the Second Arizona Registered Judgment until nearly five months later, on December 1, 2011. *See* Jike Decl'n (Doc. 16–1) at 2, ¶ 4, and exh. A thereto (Doc. 16–2) at 2–3. Fidelity has not executed upon either the Washington Registered Judgment or the Second Arizona Registered Judgment as against defendants' property, *id.* at ¶¶ 2 and 3;

and, it is not attempting to do so at this juncture.

In the meantime, Fidelity timely renewed the California judgment in that rendering court,[5] extending the period of enforceability for ten years. *See* Cal. Code Civ. Proc. § 683.120(b). Consequently, Fidelity's California judgment still is enforceable there. In reliance upon the renewed California judgment, the Washington court granted Fidelity's *ex parte* application to extend the Washington Registered Judgment. *See Fidelity,* No. 11–mc–00072 (W.D.Wash.), Ord. (Doc. 3). It thus appears that Fidelity has "an additional ten years during which an execution, garnishment, or other legal process may be issued[ ]" as to the Washington Registered Judgment, RCW 6.17.020(3), whereas the First Arizona Registered Judgment is no longer enforceable here.

## *Summary of Arguments* [6]

The primary thrust of defendants' motion is that the court should vacate the Second Arizona Registered Judgment because the "Washington [Registered] Judgment ... is not a 'new' Judgment capable of re-registration" in this court. Mot. (Doc. 9) at 8:13–14. Relatedly, defendants argue that the Washington Registered Judgment "is void for lack of due process and personal jurisdiction over" them, and hence it cannot be registered here. *Id.* at 4:1–2, ¶ 12.

Relying solely upon *Del Prado v. B.N. Dev. Co.,* 602 F.3d 660 (5th Cir.2010) ("*Del Prado II* "), and pursuant to 28 U.S.C. § 1963, Fidelity counters that it properly successively registered the Washington Registered Judgment in this court. More-

---

5. *Fidelity,* No. 11–mc–00072 (W.D.Wash.), "Ex Parte Order Extending Judgment" (Doc. 3) at 2.

6. Given the court's intimate familiarity with this action and because the issues have been

fully briefed, in its discretion the court denies the parties' request for oral argument as it would not aid the decisional process. *See* Fed.R.Civ.P. 78(b); *Partridge v. Reich,* 141 F.3d 920, 926 (9th Cir.1998).

over, Fidelity asserts that "any perceived deficiency" in the Washington Registered Judgment should be resolved by that court. Resp. (Doc. 16) at 2:21.

## Discussion

### I. Requests for Judicial Notice

Before addressing these substantive arguments, the court must consider the parties' separate Requests for Judicial Notice ("RJN") made pursuant to Fed.R.Evid. 201. Although the parties cite to subsection (d) of that Rule, clearly that was not their intent. Rule 201(d) governs the timing of when a court may take judicial notice, not the substantive basis for such a request. From the content of their respective requests, clearly the parties intended to rely upon Rule 201(b)(2). That Rule allows a court to take judicial notice of "a fact that is not subject to reasonable dispute because it ... can be accurately and readily determined from sources whose accuracy cannot be reasonably question." Fed.R.Evid. 201(b)(2).

■ Here, the sources of the parties' RJNs are all court filings in this or several closely related actions. Because these filings are all matters of public record, they are properly the subject of judicial notice. See, e.g., Terenkian v. Republic of Iraq, 694 F.3d 1122, 1137 n. 8 (9th Cir.2012) (citation omitted) (granting RJNs "of certain pleadings and court filings in the New York litigation submitted" by the parties); Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n. 6 (9th Cir.2006) ("court filings and other matters of public record" were "readily verifiable and, therefore, the proper subject of judicial notice[ ]"); Kourtis v. Cameron, 419 F.3d 989, 994 n. 2 (9th Cir.2005) (citation omitted) ("court records from related proceedings can be taken into account without converting a motion to dismiss into a summary judgment motion[ ]"), overruled on other grounds, Taylor v. Sturgell, 553 U.S. 880, 128 S.Ct. 2161, 171 L.Ed.2d 155

(2008). Therefore, the court grants the parties' respective RJNs (Docs. 14 and 17).

### II. Second Arizona Registration

First, the defendants broadly contend that the court must vacate the Second Arizona Registered Judgment because "Arizona law does not allow for re-registration of the same judgment." Mot. (Doc. 9) at 12:8–9; at 14:17–18 (emphases omitted). Arizona law does not apply, Fidelity counters, because the issue is not one of execution upon a judgment. Rather, from Fidelity's perspective, the issue pertains to registration under federal law, and 28 U.S.C. § 1963 in particular. Thus, Fidelity argues that the Second Arizona Registration is governed strictly by federal law.

#### A. Governing Law

■ The court agrees with the defendants that Rule 69(a) "provid[es] that the procedure on execution is to be in accordance with the procedure of the state in which the district court is located at the time the remedy is sought." See Hilao v. Estate of Marcos, 536 F.3d 980, 987 (9th Cir.2008). The court cannot agree, however, with defendants' extrapolation from that Rule—that "Arizona law governs all proceedings with respect to the [Second] Arizona" Registered Judgment. Mot. (Doc. 9) at 12:15–16 (emphasis added).

There is nothing in the plain language of Rule 69 to support such an expansive reading of that Rule. In fact, Rule 69(a)(1) carefully limits its application to execution of judgments, stating in pertinent part:

> The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located[.]

Fed.R.Civ.P. 69(a)(1). The issues herein do not pertain to such proceedings.

Moreover, Rule 69(a)(1) is equally clear that "a federal statute governs to the extent it applies." *Id.* In the present case, the primary issue is whether the Washington Registered Judgment "create[d] a wholly new judgment that can, in turn, be re-registered to create a wholly new judgment" in this jurisdiction, despite the expiration of the First Arizona Registered Judgment and its untimely re-registration. *See De Leon v. Marcos,* 742 F.Supp.2d 1168, 1172 (D.Colo.2010) (*"De Leon I "*), *vacated* and *remanded* on *other grounds,* 659 F.3d 1276 (10th Cir.2011) (*"De Leon II "*). Resolution of that issue implicates section 1963—the federal registration of judgments statute. Thus, there is no merit to the defense argument that based upon Rule 69(a), Arizona law governs "all proceedings" as to the Second Arizona Registered Judgment. *See* Mot. (Doc. 9) at 12:16.

In addition, the court fails to see defendants' perceived inconsistency between section 1963's provision that "[t]he procedure prescribed under this section is in addition to the other procedures provided by law for the *enforcement* of judgments[,]" and Fidelity's argument that only federal law applies here. *See* 28 U.S.C. § 1963 (emphasis added). The defendants are overlooking section 1963's unequivocal "enforcement" language, just quoted, which is not an issue at this juncture.

Likewise, there is no merit to defendants' contention that this Court *must* apply Arizona law in reviewing the issues on this Motion[,]" because purportedly "the Ninth Circuit has unequivocally recognized the applicability of state law in dealing with the *registration,* renewal and enforcement of judgment in the district in which the judgment is sought to be enforced." Reply (Doc. 20) at 7:18; and 7:3–5 (empha-

sis added). Significantly, in not one of the cases to which the defendants cite or mention did the court apply state law in "dealing with registration[.]" [7] *See id.* at 7:4. Those courts dealt, instead, with the application of state law in the context of execution, and "proceedings supplementary to and in aid of judgment or execution[,]" Fed.R.Civ.P. 69(a)(1), such as enforcement of judgments. *See Fidelity Nat. Financial Inc. v. Friedman,* 602 F.3d 1121, 1122 (9th Cir.2010) (emphasis added) (certifying to the Arizona Supreme Court two issues regarding whether Fidelity's actions "were sufficient under Arizona law to *renew* the prior registration of a judgment"); *Hilao,* 536 F.3d at 987–988 (emphasis added) (Rule 69(a) "provid[es] that the *procedure on execution* is to be in accordance with the procedure of the state in which the district court is located at the time the remedy is sought."); *Gagan v. Sharar,* 376 F.3d 987, 988 (9th Cir.2004) (emphasis added) ("This case concerns *execution* in a community property state of a judgment obtained in a common law state."); and *Matanuska Valley Lines, Inc. v. Molitor,* 365 F.2d 358, 359–60 (9th Cir.1966) (citation omitted) (emphasis added) ("[T]he *enforcement of a judgment* of a sister state may be barred by application of the statute of limitations of the forum state.") Thus, especially with no case authority to support the defendants' contrary argument, the court is not convinced that Arizona rather than federal law applies to the registration issues herein.

### B. Federal Law

Section 1963 states, in relevant part:

A judgment in an action for the recovery of money or property entered in any ... district court, ... may be registered by filing a certified copy of the judgment

---

**7.** Nor has the court's independent research unearthed any Ninth Circuit case law apply-

ing state law when dealing with federally registered judgments.

in any other district[,] when the judgment has become final by appeal or by expiration of the time for appeal[.] . . . A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner . . . .

28 U.S.C. § 1963. Here, the issue is whether a judgment registered in a federal court pursuant to that statute [8] creates a new judgment that can, in turn, be "re-registered" in a second federal court, although that "re-registered" judgment previously had been registered in that second court, where it had expired and was not timely re-registered. This novel issue appears to be one of first impression.

With conflicting results, three other courts have addressed the narrower issue of whether "registration of a judgment pursuant to 28 U.S.C. § 1963 create[s] a wholly new judgment that can, in turn, be re-registered to create wholly new judgments in other jurisdictions[.]" *See De Leon I,* 742 F.Supp.2d at 1172 (noting that this issue "is the same one faced by the Northern District of Texas [in *Del Prado v. B.N. Dev. Co.,* 4:05–CV–234–Y (N.D.Tex. Jan. 9, 2009). ("*Del Prado I* ")] and the 5th Circuit [in *Del Prado II* ]"). The district courts in *De Leon I* and *Del Prado I,* answered in the negative, but the Fifth Circuit answered in the affirmative in *Del Prado II.*

The Fifth Circuit's *Del Prado II* decision is the sole basis for Fidelity's argument that section 1963 permits what that Court has termed " 'successive registration.' " *See Del Prado II,* 602 F.3d at 662. Strenuously opposing application of *Del Prado II,* the defendants argue that Fidelity's reliance thereon is "misplaced[ ]" because that case is distinguishable. Mot.

(Doc. 9) at 14:22. Thus, regardless of whether this court finds the *Del Prado II* reasoning "persuasive," the defendants contend it simply has no applicability here. *See id.* at 16:27. Additionally, the defendants point to *De Leon I,* where the district court found, *inter alia,* that *Del Prado II* "incorrectly applied prior precedent[.]" *De Leon I,* 742 F.Supp.2d at 1176. Moreover, from defendants' viewpoint, the court's rationale in *De Leon I* is consistent with Arizona law, which requires strict compliance with renewal of judgment statutes.

With equal vigor, Fidelity argues that *Del Prado II* is sufficiently analogous to the present case such that its reasoning should apply here. Fidelity thus maintains, based upon the Fifth Circuit's *Del Prado II* decision and section 1963, that it permissibly "successively" re-registered its Washington Registered Judgment in this Arizona district court.

The parties' divergent views of *Del Prado II,* especially when coupled with the conflict between *Del Prado II* and *De Leon I,* warrant a close examination of each. The court will also look to the district court's decision in *Del Prado I.* Ordinarily, this court would not consider such a case because of its reversal on appeal. Given the paucity of relevant case law, however, and because the *Del Prado I's* reasoning aligns with what this court finds to be the thorough and thoughtful analysis in *De Leon I, Del Prado I* also is noteworthy.

The genesis for both *Del Prado* and *De Leon* was a class action commenced in the District of Hawaii, claiming human rights violations by now deceased Ferdinand Marcos, the former president of the Philip-

---

**8.** There is nothing on the face of either the May 26, 2011, Certification of Judgment filed in Washington, or on the Certification of Judgment filed in this court on July 7, 2011, indicating the bases for those filings. The court adopts the parties' operating assumption that 28 U.S.C. § 1963 was the statutory basis for both.

pines. Following a trial, in 1995, the Hawaii District Court entered a nearly $2 billion judgment in favor of the class. Pursuant to 28 U.S.C. § 1963, in early 1997, the class registered the Hawaiian judgment in the Northern District of Illinois. In the meantime, because the class did not timely extend the judgment rendered in Hawaii, by operation of Hawaiian law, that judgment was extinguished on February 2005. *Hilao*, 536 F.3d 980.

In April 2005, evidently following the transfer of the Hawaii judgment to the Northern District of Texas, the class commenced the *Del Prado* action. It sought a declaration that certain real property located in Texas was beneficially owned by the Marcos estate. The class also sought to execute and foreclose upon that property in partial satisfaction of the judgment rendered in Hawaii. During the pendency of that Texas enforcement proceeding, the Illinois registered judgment became dormant. *See* 735 ILL. Comp. Stat. 5/12–108(a). Because of that, and having no enforceable judgment in Hawaii, pursuant to Illinois law, the class filed a petition for revival of the Illinois registered judgment. The petition was granted and on September 4, 2008, the Clerk of the Court for the Northern District of Illinois entered the revived judgment pursuant to Fed.R.Civ.P. 58.

Shortly thereafter, on October 7, 2008, pursuant to 28 U.S.C. § 1963, the class registered the revived Illinois judgment in the District of Colorado. Likewise, the next day, in the *Del Prado* action, the class registered the revived Illinois judgment in Texas. On September 16, 2009, the class commenced an action in Colorado seeking partial satisfaction of the Hawaii judgment against Colorado real property which allegedly had been beneficially owned by the Marcos estate ("the *De Leon* action").

### 1. Del Prado I

The district court in *Del Prado I* rejected plaintiffs' argument that although the statute of limitations had run in Hawaii, the rendering court, the Illinois registered judgment created a new, independent judgment that could be reregistered in the Texas district court pursuant to 28 U.S.C. § 1963. In rejecting that argument, the court looked first to the "plain language" of that statute. *Del Prado I,* Doc. 237 at 7. More specifically, the *Del Prado I* court found section 1963, which on its face "allows for the registration of a 'judgment in an action for the recovery of money or property entered' in any district court, after 'such judgment has become final by appeal or expiration of the time for appeal[,]'" ... demonstrates that it is the *initial judgment on the merits* from the rendering court—i.e., the 'judgment in an action for the recovery of money or property'—*that may be registered.*" *Id.* at 7 (quoting 28 U.S.C. § 1963) (emphasis added) (citations omitted).

Shifting from the text of section 1963, the *Del Prado I* court also discussed the "scant ... interpretative case law surrounding" that statute. *See Euro–American Coal Trading, Inc. v. James Taylor Mining, Inc.,* 431 F.Supp.2d 705, 707 n. 7 (E.D.Ky.2006). Factoring prominently in that discussion was *Stanford v. Utley,* 341 F.2d 265 (8th Cir.1965) (Blackmun, J.), the seminal case construing section 1963, as well as *Home Port Rentals, Inc. v. Int'l Yachting Group, Inc.,* 252 F.3d 399 (5th Cir.2001), and the Ninth Circuit's *Hilao* decision. After examining those cases, the *Del Prado I* court recognized that "[u]ltimately, § 1963 *may* in fact allow registration of the rendering court's judgment in more than one district." *Del Prado I,* Doc. 237 at 11 (emphasis added) (citing *Board of Trustees v. Elite Erectors, Inc.,* 212 F.3d 1031, 1034 (7th Cir.2000)). At

the same time, however, as the *Del Prado I* court was quick to point out, "the *Stanford, Home Port Rentals*, and other courts to have addressed the issue acknowledge '[t]hat the registered judgment might not be congruent with a new judgment of the registration court for every purpose other than enforcement.'" *Id.* (citation omitted). Buttressed by the Ninth Circuit's decision in *Hilao*, the district court concluded *Del Prado I* was "such a case." *Id.*

*Hilao* and *Del Prado I* did raise different issues. The issue in *Hilao* was "whether registration extended the statute of limitations that was applicable in the rendering court[,]" whereas the issue in *Del Prado I* was "whether a registered judgment may itself be registered despite the running of the statute of limitations in the rendering court[.]" *Id.* Nonetheless, the Del Prado I court found that those issues raised the "same . . . concern[.]" *Id.* In particular, either way, adopting plaintiffs' position would mean "'that a federal judgment is free of state limitations and can be enforced forever.'" *Id.* at 11–12 (quoting *Hilao*, 536 F.3d at 987). "Absent clear language in . . . section [1963] or binding precedent requiring it to do so[,]" the district court in *Del Prado I* declined to give "such an unbounded effect[ ]" to that statute. *Id.* at 12.

### 2. Del Prado II

Reversing *Del Prado I,* and approving of "successive registration," the Fifth Circuit held: "Because the Illinois registered judgment was equivalent to a new federal judgment with the same status as a judgment on a judgment, it was also capable of being successively registered and enforced under § 1963 in the Northern District of Texas." *Del Prado II*, 602 F.3d at 661 and 669. The Fifth Circuit, like the district court, looked to the text of section 1963. But, unlike the district court, the Fifth

Circuit selectively read in isolation only a small part of section 1963. Not surprisingly then, the Fifth Circuit's statutory interpretation differed from the district court's. More specifically, the Fifth Circuit read part of "[t]he final sentence of § 1963 [9] [as] "clearly stat[ing] that "a registered judgment has 'the same effect as a judgment of the district court of the district where registered and may be enforced in like manner[,]' . . . to mean that once the Hawaiian judgment was registered in Illinois in 1997, [it] had the same effect as any judgment rendered in the Northern District of Illinois and could be enforced as a judgment rendered in the Northern District of Illinois." *Id.* at 665 (footnote omitted and footnote added).

The Fifth Circuit, likewise, interpreted cases such as *Stanford,* its own earlier *Home Port Rentals* decision, and *Hilao,* differently than did the district court. The Fifth Circuit found that those cases, like section 1963, "support the principal [sic] that a registered judgment has the same effect as a rendered judgment." *Id.* at 666. Lastly, "reinforce[d]" by Full Faith and Credit concepts, the *Del Prado II* Court rejected defendants' argument that the Illinois registered judgment should be "treated differently than [a] judgment on a judgment[.]" *Id.* at 668. The Court rejected that argument, *inter alia,* because defendants did not show lack of notice or that they were impeded from raising any defense when the Illinois registered judgment was successfully registered in Texas.

Putting aside for the moment the Fifth Circuit's rationale, the court agrees with the defendants that given the distinctions outlined below between *Del Prado II* and the present case, *Del Prado II* does not control here. The first and most critical distinction is that unlike Fidelity, before it

---

9. More accurately, the Court was reading the final sentence of the first paragraph of section 1963, as opposed to the final sentence of that whole statute.

attempted to register the Illinois judgment in Texas, the judgment creditor in *Del Prado II* had not validly registered the original Hawaii judgment in Texas, and allowed it to expire there. Consequently, the Fifth Circuit had no reason to address the specific issue confronting this court: whether the Washington Registered Judgment created a new judgment that can, in turn, be successively re-registered even though the First Arizona Registered Judgment expired and it was not timely re-registered here. In fact, "[n]o case cited by *Del Prado [II]* involves," as here, "a foreign judgment, registered in one state, and an attempted registration in yet a third state." *See De Leon I*, 742 F.Supp.2d at 1175 n. 6.

*Del Prado II* is distinguishable on another basis. There, the defendants argued that the revived Illinois registered judgment did not "qualify as an independent judgment because it was not 'entered'" in the Illinois district court in accordance with Fed.R.Civ.P. 58. *Del Prado II*, 602 F.3d at 665. Finding "no merit" to that argument, the Fifth Circuit pointed out that "the revived Illinois registered judgment was entered by the Clerk of the Court in the Northern District of Illinois as a separate document entitled 'Judgment in a Civil Case.'" *Id.*

Fidelity cannot avail itself of that logic, however, because the Western District of Washington Court did not separately enter any such document. Rather, as the docket sheet reflects, the predicate filing in that court was the "Certification of Judgment for Registration in Another District[ ]" issued by the rendering California court. *See* Defs.' RJN (Doc. 14), exh. G thereto (Doc. 14–7) at 3. Nor, as more fully explained herein, did *Del Prado II* raise the specter, as does this action, that successive registration would conflict with state law. These differences demonstrate, once again, "that Fidelity's reliance upon *Del Prado*

*[II]* is misplaced." *See Fidelity V*, 855 F.Supp.2d at 970 (internal quotation marks and citation omitted).

### 3. *De Leon I*

Even overlooking those distinctions (which it is not), the court flatly rejects Fidelity's argument that *Del Prado II's* "reasoning . . . applies here." Resp. (Doc. 16) at 5:19. The court rejects that argument because it, too, "respectfully disagrees with the [Fifth] Circuit's reasoning[ ]" in *Del Prado II*. *De Leon I*, 742 F.Supp.2d at 1172. Fidelity suggests that this court should disregard *De Leon I* because "it has been reversed[,]" and the Tenth Circuit found that decision to be "void." Resp. (Doc. 16) at 6:26–27, n. 3 (citation omitted). Actually, because the Tenth Circuit did not reach the merits, it did not reverse the district court. Rather, it vacated and remanded.

Regardless, this court is acutely aware that the Tenth Circuit found *De Leon I* to be "void" because it was issued after the parties' filing of a stipulation of dismissal, "and therefore in the absence of jurisdiction." *De Leon II*, 659 F.3d at 1284 (citation omitted). Despite the foregoing, and as previously noted, this court concurs with *De Leon I's* rigorous and sound analysis, wherein it found that the judgment creditor could not re-register the Illinois revived judgment in Colorado so as to support that enforcement action.

Several aspects of *De Leon I* heavily inform this court's conclusion that, likewise, the Washington Registered Judgment cannot be successively re-registered in this Arizona district court. Briefly, they are: (1) the nature of a judgment which can be registered pursuant to 28 U.S.C. § 1963; (2) the attributes of a judgment registered under that statute; and (3) the reasons why registered and domestic judgments are not equivalent for all purposes. The court will discuss these seriatim.

■ The first persuasive aspect of *De Leon I* is its conclusion "that *only* an original judgment, issued by a court upon the substantive merits of an adversarial dispute, can be registered pursuant to 28 U.S.C. § 1963[.]" *De Leon I*, 742 F.Supp.2d at 1172. The starting point for that conclusion was "the fundamental legal axiom that a judgment is 'the final determination of an action,' that embodies a court's adjudication of 'a claim pressed and resisted (or the opportunity for resistance) by adversaries'[.]" *Id.* (10 Wright, Miller & Kane, *Federal Practice and Procedure,* Civil 3d Ed., § 2651, *quoting In the Matter of Fidelity Tube,* 167 F.Supp. 402, 404 (D.N.J.1958)) (other citation omitted).

Scrutinizing the text of 1963, the court in *De Leon I* explained, the language "authoriz[ing] registration of a 'judgment in an action for the recovery of money or property entered in any court of appeals, district court, bankruptcy court, or in the Court of International Trade[ ]' . . . anticipates two requirements." *Id.* at 1173. The first is "that a judgment has been *entered* by a court (as compared to a 'judgment' that comes into effect by being registered) [.]" *Id.* (emphasis in original). The second requirement is that such a judgment "be entered in an action for the *recovery o[f] money or property* (in essence, reflecting the adjudication of a claim for tangible, not simply declaratory, relief)." *Id.* (emphasis in original). That construction of section 1963, as the *De Leon I* court persuasively reasoned, "is consistent with the fundamental nature of a judgment—a document reflecting the determination of a claim on its merits." *Id.*

In juxtaposition, a registered judgment "is simply the perfection of an existing judgment in another jurisdiction so as to permit foreign enforcement." *Id.* This court agrees that "[i]nterpreted in this way, [section 1963] would appear to provide that *only* an original judgment resolv-

ing an adversarial proceeding for tangible relief can be registered in another jurisdiction." *Id.* (emphasis added).

The district court in *Del Prado I* did not so closely parse section 1963; but, as mentioned earlier, it similarly construed the plain text of that statute, finding that only the original judgment of the rendering court, "in an action for the recovery of money or property[,]" may be registered. *Del Prado I,* Doc. 237 at 7 (internal quotation marks and citations omitted). The court in *Del Prado I* bolstered that reading of section 1963 by astutely observing that "it could not seriously be contended that when a clerk enters the judgment of another district court on the docket of his own court he has created a final judgment that may be appealed pursuant to 28 U.S.C. § 1291." *Id.* at 8 (citing, *inter alia,* 28 U.S.C. § 1963) (allowing registration only after the rendering court's judgment is final).

■ Based upon the straightforward and unequivocal language of 28 U.S.C. § 1963, this court agrees with the *De Leon I* and *Del Prado I* courts: that statute permits registration in another district only of judgments which have been entered by the rendering court, and which were entered following the "adjudication of a claim for tangible . . . relief[.]" *See De Leon I,* 742 F.Supp.2d at 1173. The Washington Registered Judgment fits neither requirement. There was no entry of a judgment in the Western District of Washington, as previously explained.

Additionally, the Washington Registered Judgment is not "an original judgment, issued by a court upon the substantive merits of an adversarial dispute[.]" *See id.* at 1172. Rather, the original judgment was issued and entered in the California Court following a jury trial. Consequently, the Washington Registered Judgment is "simply the perfection of [the] existing

[California] judgment in another jurisdiction so as to permit foreign enforcement." *See id.* Thus, regardless of defendants' due process and personal jurisdiction concerns, the Washington Registered Judgment cannot be re-registered in this court because it is not a judgment capable of registration within the meaning of section 1963.

The *De Leon I* court's analysis of the "attributes" of a registered judgment is just as compelling as its textual argument, and further convinces this court that the Washington Registered Judgment cannot be successively re-registered in this court. *See id.* The Fifth Circuit in *Del Prado II* held that the registration of a judgment under section 1963 creates a new judgment that has *"all* of the attributes of a judgment rendered by [the jurisdiction of registration]," that, in turn "may be re-registered" in other jurisdictions. *Del Prado II,* 602 F.3d at 667 (emphasis added). Disagreeing, the court in *De Leon I* recognized that "although one might equate a registered judgment with a domestic judgment for purposes of enforcement in the state of registration, there is no particular reason to conclude that a registered judgment has all of the collateral features of a domestic judgment, such the ability to be (re-)registered in yet another jurisdiction." *De Leon I,* 742 F.Supp.2d at 1175.

The court arrived at that conclusion after dissecting *Stanford,* "[t]he seminal case grappling with the issue" of "what attributes [a] registered judgment has[,]" and also looking to the Fifth Circuit's "own prior reasoning" in *Home Port Rentals. Id.* at 1173 and 1175. In *Stanford,* the Court held that if a judgment is properly registered in one state pursuant to 28 U.S.C. § 1963, it may be enforced within the limitations period of that registration state, despite the running of the time for enforcement in the rendering state. Explicitly "not[ing] by way of caveat that

§ 1963 presents much to be answered in the future[,]" then Judge Blackmun "emphasize[d] that [its] conclusion ... is one having *application to the fact situation in this case." Stanford,* 341 F.2d at 271 (emphasis added). Indeed, the *Stanford* Court deliberately left unanswered a "string of hypothetical questions[,]" *De Leon I,* 742 F.Supp.2d at 1174, the most significant of which, for present purposes, is whether "a registered judgment itself [is] subject to registration elsewhere?" *Stanford,* 341 F.2d at 271. In carefully limiting its holding, the *Stanford* Court circumspectly stated that it was "not ... go[ing] so far as to say that registration effects a new judgment in the registration court for every conceivable purpose; nor do we say that it fails to do so for any particular purpose." *Id.*

Despite that careful limitation, as the *De Leon I* court astutely pointed out, the Fifth Circuit in *Del Prado II,* "cited *Stanford* and other cases ..., for a broader proposition that 'a registered judgment is equivalent to a new federal judgment.'" *De Leon I,* 742 F.Supp.2d at 1174 (quoting *Del Prado II,* 602 F.3d at 666, citing *Stanford,* 341 F.2d at 269–270). In particular, the Fifth Circuit "fail[ed] to acknowledge that prior precedent equates registered and domestic judgments *only* for purposes of enforcement in the state of registration." *Id.* at 1175 (emphasis added). As the court in *De Leon I* cogently explained:

Cases such as *Stanford* and *Home Port Rentals* make clear that, although one might equate a registered judgment with a domestic judgment for purposes of enforcement in the state of registration, there is no particular reason to conclude that a registered judgment has all of the collateral features of a domestic judgment, such [as] the ability to be (re-)registered in yet another jurisdiction.

*Id.* In light of the foregoing, and the other persuasive reasons more fully set forth in *De Leon I*, this court agrees with its assessment that *Del Prado II* "incorrectly applied prior precedent." *See id.* at 1176. Thus, borrowing the *De Leon I* rationale, this court finds that the Washington Registered Judgment does not have "all of the collateral features of a domestic judgment, such [as] the ability to be (re-)registered in yet another jurisdiction[,]" such as this Arizona District Court. See *id.* at 1175.

· Not satisfied with simply explaining its perceived flaws in the *Del Prado II* analysis, the court in *De Leon I* "proceed[ed] to examine ... anew[ ]" the issue of whether "registration of a judgment pursuant to 28 U.S.C. § 1963 create[s] a wholly new judgment that can, in turn, be reregistered to create wholly new judgments in other jurisdictions?" *Id.* at 1176; and at 1172. That examination provides equally compelling reasons why this court is guided by *De Leon I* and not *Del Prado II*, as Fidelity urges.

As "[c]ases such as *Stanford* and *Home Port Rentals* ... wisely note," and the court further explained in *De Leon I*, section 1963's "statutory language does not compel the conclusion that a registered judgment is the equivalent of a domestic judgment for *all* purposes." *Id.* at 1175; and at 1176 (emphasis in original). The *De Leon I* court provided several well-founded "reasons why it is logical to differentiate registered judgments and domestic judgments for purposes of determining which can, in turn, be registered elsewhere." *Id.* at 1176. "First, and perhaps most obviously," the *De Leon I* court expressed understandable concern that "a rule equating registered and domestic judgments for all purposes allows judgment creditors to avoid any application of

statutes of limitation and repose applying to judgments." *Id.* "The practical effect" of such "serial registration ... is that no judgment could ever expire, and that creditors could simply criss-cross the nation, registering and re-registering their judgments in perpetuity." *Id.*

The present case shows all too vividly how "serial registration" would conflict with Arizona's statute of limitations pertaining to actions on foreign judgments, thus "mak[ing] a mockery out" of that statute. *See id.* In *Fidelity V*, this court held that "Fidelity permissibly re-registered [the] Arizona [registered] judgment under 28 U.S.C. § 1963 by filing a second Certification of Judgment in this court[.]" *Fidelity V*, 855 F.Supp.2d at 973 (footnote omitted). Significantly, however, this court also found that re-registration to be untimely under A.R.S. § 12–544(3) [10] because "Fidelity's [First] Arizona [Registered] [J]udgment became enforceable On December 3, 2002[,] ... ten days after its entry[,]" but "Fidelity did not even attempt to 're-register' its judgment until April 5, 2007[.]" *Id.* at 978 and 979. Consequently, allowing Fidelity to register the Washington Registered Judgment in this court, where its First Arizona Registered Judgment has been vacated because it was not timely "re-registered," would be allowing Fidelity to circumvent Arizona's statute of limitations—a result this court cannot condone. ·

Furthermore, allowing Fidelity to register the Washington Registered Judgment in Arizona under the facts of this case would "create the possibility of a cascading fountain of reregistered judgments[,]" which the *De Leon I* court warned against. *See De Leon I*, 742 F.Supp.2d at 1176. As that court rightly foresaw, "[w]hatever un-

10. Section 12–544(3) requires that an action "[u]pon a judgment ... rendered without the state" be "commenced ... within four years after the cause of action accrues [.]" A.R.S. § 12–544(3). · ·

**986**

certainties and difficulties arise from allowing a judgment in one jurisdiction to be registered and enforced in another will be magnified—potentially exponentially—when the registered judgment can, in turn, be re-registered and enforced elsewhere, independently of the original judgment." *Id.* The court went on to illustrate how that "complexity" would "be further compounded by the sale of certain judgments to different holders, all of whom·may be seeking to collect against the assets of the judgment debtor." *Id.* (footnote omitted).

"Plaintiff's version of the rule," *i.e.,* allowing reregistered judgments to be re-registered and enforced elsewhere, independently of the original judgment[,]" would necessitate "a lengthy, imprecise, and potentially recursive untangling" of such judgments. *Id.* By way of example, the court hypothesized that "a Georgia-registered judgment in dispute" would have to be "traced back to a Vermont-registered judgment, which itself derived from a Virginia-registered judgment, which may be traceable to a *different* Georgia-registered judgment, etc." *Id.* (emphasis in original). Like the *De Leon I* court, this court also cannot condone such a "a web of interlocking and recursive registration, re-registration, and re-re-registrations[,]" *id.* at 1177, especially where, as here, the First Arizona Registered Judgment was not timely re-registered under Arizona law.

In contrast, one clear advantage of "a scheme in which only the original judgment can be registered, [is that] every re-registered judgment relates back to a single source by a single transaction." *Id.* This means that "[a] party or court having concerns about the validity of a registered judgment need only trace back the matter one level—from the registration state to the original judgment." *Id.*· (footnote omitted). "Satisfaction or partial satisfaction of the registered judgment can be reflected by· a notation on the original judgment, supplying notice of partial satisfaction to anyone reviewing the registration of that original judgment in another jurisdiction." *Id.* Thus, "a scheme that treats registered judgments and domestic judgments similarly for instate enforcement purposes—thus satisfying the statutory requirements of § 1963—but denies registered judgments the capability of being ·re-registered elsewhere[,]" avoids "[t]he mischief of recursive registration and judgment creation[.]"[11] *Id.*

For all of these reasons, the court finds that Fidelity impermissibly filed the Washington Registered Judgment in this court pursuant to 28 U.S.C. § 1963. Accordingly, the court hereby **GRANTS** defendants' motion to "vacate the certification of judgment for registration in another district[,]" Mot. (Doc. 9) at 1:16–17 filed in this court on July 7, 2011. The granting of this motion renders moot defendants' secondary argument that because the Washing-

11. The last issue addressed in *De Leon I* was plaintiff's suggestion that the revived Illinois judgment was equivalent to "a 'judgment on a judgment.'" *De Leon I*, 742 F.Supp.2d at 1177. Fidelity is not making a similar suggestion in this case. Hence, the court need not consider whether the Washington Registered Judgment is equivalent to a judgment on a judgment. The court observes, however, that the same reasons which prevented the *De Leon I* court from treating the Illinois judgment as a judgment on a judgment preclude treating the Washington Registered Judgment as a judgment on a judgment. More specifically, as in *De Leon I*, because the Washington Registered judgment "did not include a Summons, Certificate of Service, or any other indication" that at the time of registration Fidelity gave notice to defendants of that registration, this court could not find that such judgment was equivalent to the Washington court "having duly adjudicated an adversarial proceeding and issued a 'judgment on a judgment.'" *See id.* at 1178 (footnote· omitted).

ton Registered Judgment "is void for lack of due process and personal jurisdiction, it cannot be the basis for the registration of a new judgment in Arizona." *See id.* at 19:17–18.